## MATTESON VS. JACKMAN.

.DAMAGES. (1) *Rule where both parties are equally guilty of laches.*
COUNTERCLAIM. (2) *Not valid on the case stated.*

1. A. cannot recover damages accruing to him from B.'s *laches*, where it was fully competent to him to avoid the damage by doing the acts which he complains of B. for omitting to perform, and he was equally guilty of *laches* in neglecting to perform them.
2. In an action on promissory notes against the maker, he set up a counterclaim on the ground that the notes were secured by a mortgage on his mill; that after the execution of the mortgage, he, at plaintiff's request but at his own expense, caused his interest in said mill to be insured against loss by fire, the policies providing that any loss

should be paid to plaintiff as mortgagee, according as his interest should appear; that afterwards he delivered the policies to plaintiff, at his request, upon the condition and agreement that in case of injury to the property by fire, plaintiff would promptly comply with all the conditions required of the insured by such policies, and would collect and receive all moneys that should become due upon them and apply the same in payment of the notes, and pay any balance to defendant; that the mill was afterward destroyed by fire, during the life of the policies; that in consequence of plaintiff's neglect, for a long time thereafter, to make proof of the loss, his subsequent neglect to urge and compel payment by suit at law or otherwise, and his refusal to accept a certain sum (greater than the amount of said notes) offered by the insurance companies in compromise and satisfaction of their indebtedness for said loss, payment was not made upon the policies; that afterwards, on etc., said companies became, and they still remain, unable to pay said loss, and payment thereof cannot be enforced; and that, by reason of such default of plaintiff, defendant has sustained damage, etc. *Held*, that the answer does not show that defendant was in any way prevented by plaintiff from himself promptly making proof of the loss, or from enforcing payment therefor, or accepting the terms offered by the insurers; or that he was not equally guilty of *laches* with plaintiff; and therefore it does not state a valid counterclaim.

APPEAL from the Circuit Court for *Rock* County.

Action upon promissory notes. Complaint in the usual form. The answer, after alleging certain facts by way of defense, alleged substantially the same facts by way of counterclaim to plaintiff's demand. The allegations of the counterclaim were: That, at the time of executing the notes in question, defendant, to secure said notes, executed and delivered to plaintiff a mortgage upon a certain mill and mill property in the city of Janesville; that afterwards, at plaintiff's request, defendant caused his interest in said mill to be insured against loss by fire in two different companies, at his own expense; that each of the policies contained a condition that the loss, if any, should be paid to the plaintiff as mortgagee, according as his interest should appear; that defendant, at plaintiff's request, delivered the policies to plaintiff, upon condition that in case

of loss or injury to the property plaintiff should promptly comply with all the requirements of the policies, and should collect all money due thereunder, the same to be applied in payment of the notes mentioned in the complaint, the surplus, if any, to be accounted for to the defendant; that the mill was afterwards, during the life of the policies, totally destroyed by fire, and that each of the insurance companies was for a long time afterward solvent, and payment for the loss could have been enforced by plaintiff upon compliance with the terms and conditions of the policies; that plaintiff for a long time afterward neglected to make proof of loss as required by the policies, until defendant, learning of such neglect, and at the request of plaintiff and by his direction, made the proofs of loss, which plaintiff caused to be served upon the companies; that plaintiff, after making service of said proofs, neglected to urge and compel payment by said companies, by suit or otherwise, until they both became unable to pay said losses, and payment could not be enforced in any court; that soon after the loss each of said companies offered to adjust the loss by payment of a certain sum (both sums being greater than the amount of the notes), which defendant advised and requested plaintiff to accept, but that he refused to accept any sum less than the full amount of the policies; whereby, and by reason of plaintiff's neglect and default, defendant sustained damages to the amount of five thousand dollars, for which sum he demanded judgment.

Plaintiff demurred to the entire answer, the demurrer to that portion stated as a counterclaim, above cited, alleging that it did not constitute a counterclaim or defense; that it did not show that it was plaintiffs' right, privilege, or duty to make the proofs of loss, but that it showed it to be defendant's duty to make such proofs and take all necessary proceedings to fix the liability of the companies; that the answer failed to show that plaintiff could have commenced or maintained an action on either of the policies prior to the insolvency of the

companies; that the answer showed that upon complying with the terms and conditions of the policies, the defendant could have commenced and maintained actions thereon as soon as the liability of the companies became fixed and the money became due and payable.

The demurrer was overruled as to that portion of the answer setting forth the counterclaim, and sustained as to that portion of the answer setting up a defense. Plaintiff appealed from so much of the order as overruled the counterclaim.

*Pease & Ruger*, for appellant, argued that the allegation of the answer that plaintiff agreed to comply with all the conditions required of the assured by the policies, must be understood merely as an allegation that plaintiff agreed to prepare the necessary proofs for defendant to swear to. Thus construed, the allegation amounts to nothing without a further allegation that defendant offered or was ready to make oath to the proofs, and that defendant neglected to prepare them. The answer also fails to state that defendant expected plaintiff to make the proofs; or that plaintiff had the right or necessary knowledge to make them; or that the defendant did not, at all times, have access to the policies. The answer also fails to give any reason whatever why the defendant did not himself make the proofs as required by the policies. But, conceding that the allegation means that the plaintiff agreed, not only to make the proofs, but to swear to them, and that such proofs would have been effectual to fix the liability of the companies and make the losses payable, the answer is still insufficient, for it shows that the defendant could have avoided the consequences of plaintiff's alleged neglect, by making the proofs himself. Shearm. & Redf. on Neg., § 240. And see *Ayres v. Ins. Co.*, 17 Iowa, 176; *Carpenter v. Ins. Co.*, 16 Pet., 501, 502; *Grosvenor v. Ins. Co.*, 17 N. Y., 395; Shearm. & Redf., §§ 15, 598. The allegation that the companies offered to adjust the losses and to pay plaintiff $4,250 in settlement of the same, is irrelevant, since the answer shows that the contract was to pay de-

fendant's loss, and he was, therefore, the only person who could adjust or compromise that loss. All that was necessary was for the defendant himself to have accepted the compromise.

*Winans & Dixon*, for respondent, argued that, under the agreement set forth in the answer between plaintiff and defendant, plaintiff was liable for the damages resulting from his *laches.* See instruction of the court below in *Plant's Man. Co. v. Falvey*, 20 Wis., 202, affirmed upon appeal. Even in the absence of an agreement on the part of plaintiff to enforce payment from the companies, the law would imply such agreement, because, the mortgage remaining unpaid, the mortgagee only could maintain an action upon the policies to recover the amount of his debt from the companies. *Ennis v. Harmony Ins. Co.*, 3 Bos., 516; *Ripley v. Ætna Ins. Co.*, 29 Barb., 559. An agreement to collect is an agreement to make diligent use of the ordinary legal means for enforcing payment. *Day v. Elmore*, 4 Wis., 190.

DIXON, C. J. The appeal is from so much of the order as overruled the demurrer of the plaintiff to that part of the answer, separately pleaded, setting up a counterclaim to the causes of action declared on by the plaintiff. With the first paragraph, or so much of the answer as attempted to set up the same or nearly the same facts by way of defense, we have nothing to do, the demurrer of the plaintiff thereto having been sustained by the circuit court, and no appeal taken by the defendant.

Counsel for the defendant seek to make out and sustain the counterclaim on the ground of *laches* in the plaintiff by his failure promptly to make out and present proofs of the loss of fire, and also by his omission to prosecute the insurance companies with diligence by action, after the proofs of loss were made and presented, as it is claimed by the defendant and alleged in the answer the plaintiff had agreed to do. Another ground of counterclaim is, the damages averred to have been

sustained by the defendant by reason of the refusal of the plaintiff to accept the $4,250 offered by the insurance companies in satisfaction of the policies.

If, notwithstanding all that is averred in the answer, it still appears, or may be reasonably and justly inferred from the facts stated, that the defendant, at the same time that he complains of the negligence and inattention of the plaintiff, had it fully in his own power to apply the remedy or avoid the evil ; if it appears that it was all the time competent for the defendant himself to have done the acts which he complains of the plaintiff for omitting to do, namely, to make the proofs of loss, bring suits against the insurance companies, and accept the sum offered by them in compromise and adjustment of the loss ; if it appears that the plaintiff did not stand in the way of or wrongfully or improperly hinder or prevent the defendant from doing those things ; and if, finally, it appears that the defendant was equally at fault and equally careless and negligent with the plaintiff in matters in which they were mutually concerned and interested, and as to which each stood on an equal footing with the other with respect to his power and authority to move and to act ; in such a case, we say, it would be a most extraordinary rule of law which would hold the plaintiff responsible in damages to the defendant for his, plaintiff's, misconduct, and would at the same time exonerate the defendant from all the consequences of his, defendant's, equal wrong and negligence contributing to the same loss or injury.

And this is the way the supposed counterclaim set up in the answer strikes our minds. Notwithstanding the answer alleges that the plaintiff agreed to make the proofs in case of destruction of the mill by fire, it was still competent for the defendant to have done so, and he was equally and more interested in doing it than the plaintiff. The inference rather is, that the defendant was the only proper party to make the proofs, for the answer speaks of the terms, stipulations and conditions required of the assured, and the defendant was "the insured." The

answer avers not one single fact or circumstance showing or tending to show that the plaintiff deceived, misled, or in any manner interfered with or delayed the defendant in making the proofs. It avers that the plaintiff neglected to make the proofs for about one month, and then that the defendant made them *at the request of the plaintiff*, but offers nothing whatever in excuse or explanation of the defendant's negligence during the same time.

The answer alleges that the plaintiff neglected to urge or compel payment by suit at law or otherwise, but presents no fact in extenuation or acquittal of the inactivity and delay of the defendant in the same respects. The defendant was the party primarily interested — the insured, to whom the policies ran,— and it was competent for him to urge payment, and to bring suits in his own name, making the plaintiff a party defendant to the actions in case he refused to join as plaintiff. It was as much the duty of the defendant to be vigilant and active as it was that of the plaintiff. The answer does not even aver that the defendant ever requested the plaintiff to bring suit or to join him, the defendant, in one.

And with regard to the offer made by the insurance companies in compromise or satisfaction of the loss, nothing appears why the defendant might not himself have accepted it, or why he did not. It is agreed by counsel on both sides, that it was of a sum exceeding the amount of the plaintiff's claim, or of the indebtedness of the defendant to him at that time; and, if the plaintiff refused to accept, the defendant might have accepted for him, and directed a payment or tender of the amount to him by the insurance companies. If the defendant had done this, and then the plaintiff had refused to accept or receive the money, the remedy of the defendant against the plaintiff would have been complete. · The plaintiff had no interest in the funds or claims against the insurance companies beyond the amount of the debts due him from the defendant,

and could not prevent any compromise when his own demands were satisfied or offered to be.

That portion of the order appealed from must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*—It is so ordered.