LEE v. THE CHICAGO, ROCK ISLAND AND PACIFIC
RAILWAY COMPANY.

1. **Railroads**: COLLISION AT CROSSING: POSITIVE AND NEGATIVE EVIDENCE: CONFLICT. Where defendant's witnesses testified positively that the whistle of an engine was blown and its bell rung at the approach of a certain crossing, and plaintiff, whose team was struck by an engine at the crossing, testified that he was looking and listening for trains, but heard neither alarm, and one of his witnesses testified that he was observing the train, and was in a position to hear either alarm, if given, but heard neither, *held* that there was a plain conflict in the evidence, and that it was properly submitted to the jury.

2. ——: ——: CONTRIBUTORY NEGLIGENCE: EVIDENCE. In such case, defendant introduced evidence of measurements and observations taken some time subsequent to the accident, from which it would appear, had there been no change in the surroundings, that, with due care in approaching the crossing, plaintiff should have seen the approaching train and avoided the injury; but *held* that this evidence was not conclusive on plaintiff, because there was other evidence from which the jury might have found that there had been a material change in the surroundings.

3.  **The Same.** Where plaintiff, in such case, in approaching the crossing, drove slowly and carefully, and stopped less than seventy feet from the track, and, standing in his wagon, looked both east and west for trains, and, seeing none, sat down and drove on, looking again to the east and west, and listening all the time, *held* that he could not be charged with contributory negligence simply because at one point, twenty feet from the crossing, of which he had no knowledge, the train could have been seen ten hundred and eighty feet away. (*Schaefert v. Railway Co.*, 62 Iowa, 627, and *Haines v. Railway Co.*, 41 Iowa, 227, *distinguished.*)

4.  **The Same.** In such case, though plaintiff testified that his hearing was good, he could not be charged with contributory negligence on the mere ground that others, at a greater distance from the train than he was, heard it approaching.

5.  **Railways:** COLLISION AT HIGHWAY: CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. In this case, *held* that there was no prejudice to defendant in refusing to give an instruction asked on the subject of contributory negligence, since the instructions given were fully as favorable to defendant. (See opinion for instructions asked and given.)

*Appeal from Mahaska District Court.*—HON. W. R. LEWIS, Judge.

FILED, MAY 19, 1890.

ON the eighth day of December, 1886, while the plaintiff was crossing the defendant's road with his team and wagon, they were struck by an engine, and one horse killed, and the other horse and the wagon were injured; and this action is to recover the damage sustained thereby. From a judgment for plaintiff the defendant appeals.

*Thos. S. Wright* and *Geo. W. Lafferty*, for appellant.

*Phillips & Greer* and *Bolton & McCoy*, for appellee.

GRANGER, J.—I. The negligence urged against the defendant in the operation of its train, whereby the accident is said to have occurred, is a failure to blow the whistle or ring the bell as the train approached the crossing. Several witnesses were examined on this point by the respective parties; and the proposition

1. RAILROADS: collision at crossing: positive and negative evidence: conflict.

urged by appellant is that, as to the ringing of the bell and the blowing of the whistle, the testimony on the part of the defense is positive or affirmative, while that on the part of plaintiff is negative, and that the value of the positive testimony is so much greater than that of the negative that, as a matter of law, it should outweigh it, and reverse the judgment because of a failure to establish the negligence of the defendant. In support of this proposition appellant quotes from the opinion in the case of *Ralph v. Railway Co.*, 32 Wis. 182, wherein the court has employed the language of Mr. Greenleaf, in his work on evidence (volume 3, section 375): "That the positive testimony of one credible witness to the fact is entitled to more weight than that of several others who testify negatively, or at most to collateral circumstances, merely persuasive in their character." Appellant's selection of a case wherein the rule is cited is indeed apt; for it so happens that in that case two witnesses testify as to the delivery of rope for shipment,—one testifying positively to its delivery, and the other giving negative testimony based on circumstances "merely persuasive in their character," and the witnesses were exactly alike as to their credibility In that case the court reversed a judgment based on evidence of such a negative character. But will it be said that, in all cases where one witness shall give positive testimony as to a particular fact, and one or two witnesses shall give negative testimony as to such fact, the positive testimony shall prevail? Suppose three persons are observing an approaching train, and the purpose of each is to know if the bell is rung as it approaches a crossing, and their means of knowing the fact are alike, if one shall testify that it did ring, and two that it did not, will the positive testimony, as a matter of law, prevail over the negative? We deal now only with what the law will declare. It is not a question as to which testimony is the most convincing. A careful examination of the rule quoted will show that it does not apply to cases in which the negative

testimony is based on direct observation as to the particular facts to be determined, but its application is generally limited to cases in which negative facts are sought to be established by proof of collateral circumstances or facts. The rule has a fair illustration in the case at bar. Some of the witnesses for the plaintiff, testifying as to the ringing of the bell or the sounding of the whistle, merely say they do not remember of hearing either. Their testimony is only as to their recollection. They do not testify positively that they did not hear them, nor that they were not sounded. If all the testimony on this branch of the case was of this character, we should, as at present advised, incline to appellant's position, and hold the testimony, as a matter of law, insufficient. Such, however, is not the case.

To our minds, there is a plain conflict of testimony on this branch of the case. Pliney Jewell, in his testimony, says he heard the train coming from the east, and heard it whistle for the second crossing, east of where the accident occurred ; that he was on a load of hay, with his team standing, and he was watching the train. He says : "I watched the railroad, and watched the train. I did not hear it whistle again, after the time I have mentioned, until it was right by the crossing ; on the crossing ; just several toots right together." He then said : "That was the first whistle I heard after passing the second crossing east of there." This testimony would have been no more positive nor stronger if he had said the train did not whistle after passing the second crossing. Such a statement would have meant no more than that he did not hear it. His sense of hearing in such a case would be his only means of knowledge. To this may be added the testimony of the plaintiff that he was listening and looking for trains, and did not hear either alarm. This testimony is plainly in conflict with that of the defense, which is to the effect that both alarms were given. If we concede that, to our minds, the testimony preponderates for the defendant, we are not justified in reversing.

II. It is urged that the testimony shows without conflict that the plaintiff was guilty of contributory negligence, and for that reason he cannot recover. It is claimed that with proper care the plaintiff could have seen or heard the approaching train, and thus avoided the accident. In this respect, too, we encounter a conflict of testimony, over which we have no control. Certain measurements were made, and observations taken, at the instance of appellants, which, if accepted alone, would show that the plaintiff, in approaching the railroad with proper care, would have observed the train approaching. But these observations and measurements were not made at the time of the accident, or so near it that the conditions were necessarily the same. In fact, it appears affirmatively, in some respects, that they were different; and in many respects, under the testimony; the jury might have found them different. The testimony shows that at the time of the accident the view of the track from the approaching highway was obstructed by piles of ties and rails; by tall weeds and timber; that a short distance east of the crossing the track entered a cut of slight depth at first, but gradually increasing.

2. contributory negligence: evidence.

It may be conceded that, at certain points of observation on the highway, the plaintiff, sitting on his wagon, as he was, might have stopped and observed the train, if at that time in sight; but such fact would not be conclusive as to his negligence. It is urged that, at a point twenty feet south of the south rail at the crossing, the train could be seen one thousand and eighty feet east, and that a failure to stop there and look was negligence. The case of *Schaefert v. Railway Co.*, 62 Iowa, 627, is relied upon to sustain this position. The cases are clearly distinguishable. In the *Schaefert case* the son of the plaintiff, who was driving the team that was injured (the son being killed), knew of the point from which a train could be seen, and that it was the only one; but,

3. The same.

instead of going to that place and stopping to look, he stopped further back, where the view was obstructed by a hill. The court, in holding as it did, places particular stress on the fact of the knowledge of the driver, and of his neglect to stop where he could see, and that he drove quite fast to or near to the track where his team was struck. In this case no such facts appear. The plaintiff drove slowly and carefully to the track. He stopped less than seventy feet from the track, and, standing in his wagon, looked both east and west for trains; and, seeing none, he sat down and drove on, looking again to the east and west, and "listening all the time" to see if he could hear the train. If it appeared that there were particular places from which the train could be seen, and that he knew of such places, and, without regard to them, drove recklessly onto the track, or to it, a very different case would be presented.

The plaintiff testified that his hearing is good; and, as others heard the whistle and rumble of the train at a greater distance from it, it is urged that, under the undisputed facts, plaintiff was "bound to hear the train." We are hardly prepared to announce such a rule as the law. The conditions under which the other parties heard the train might have been, and to some extent really were, different. Their direction from the train, and the course of the wind, might have aided them to hear. Nor do all persons who regard their hearing as good hear alike. Persons with supposed good hearing and sight, even when together, and with like surroundings, often do not see and hear the same. It is not a case where conceded or undisputed facts are allowed to prevail as against the sworn statements of the plaintiff, as held in *Artz v. Railway Co.*, 34 Iowa, 158. It comes within the rule as announced in the closing paragraph of the opinion in that case.

4. THE same.

It is claimed that this case, in many of its facts, is like that of *Haines v. Railway Co.*, 41 Iowa, 227, in

which there was a reversal. We think the facts are very different. We will notice one. In that case, for seventeen feet before reaching the track, there was an unobstructed view of the track down to the ringing post, twelve hundred and eighty feet. Before that, for some distance, the view had been obstructed. If the plaintiff in that case had looked when he reached the unobstructed point, seventeen feet from the track, he surely could have seen the train. From that point to the track there were no obstructions, and the fact that the train was not seen was the result of unquestioned carelessness. It is not so in this case. In this the track crossed the highway obliquely, and the obstructions were close to the track, and the plaintiff testifies that, with looking and listening, he did not see or know of the train till just as it struck his team.

III. Appellant asked the court to give the following instruction : "3. If you find, from the evidence, that plaintiff, knowing of the position of the railroad track, and that trains were running frequently thereon, approached the crossing without looking in the direction from which the train was coming, and without stopping his team at a point where he could have seen an approaching train, and in consequence his horses were injured, plaintiff cannot recover ; and if you find from the evidence that the plaintiff could have seen the approaching train, by looking in the direction of it, before he reached the crossing, and in time to have avoided a collision, by ordinary care, and omitted to do so, such omission was negligence, and you should find for the defendant." The instruction asked is claimed to be a substantial copy of numbers 11 and 12, asked and refused in the case of *Haines v. Railway Co.*, *supra*, and for which refusal the case was reversed. The court refused the instruction in this case, and it is urged that the refusal is alike fatal to the judgment. In this case the court gave the following : "7. It was the duty of the plaintiff, in approaching the crossing, to exercise reason,

*5. RAILWAYS: collision at highway: contributory negligence: instructions.*

and his senses of hearing and seeing, to save his team
from injury; and, if he fails to show, by the weight of
the evidence, that he did so, and you find that, in con-
sequence thereof, they, or any of them, were injured,
or if such failure in any degree contributed to such
injuries, the plaintiff cannot recover. It was not only
his duty to look and listen for approaching trains at all
points in his passage, but, if the view or sound of trains
was obstructed by timber, brush, trees, piled ties or the
unevenness of the surface of ground, it was his duty to
stop his team at a point which due care pointed out as
the most favorable, and look and listen for trains ; and
if in any of these things the plaintiff was negligent,
and such negligence caused or contributed to the inju-
ries he complains of, he cannot recover. 8. Diligence
is such care and prudence as are usually exercised by
persons of common or average care and prudence, and
is to be measured, in any given case, by the circum-
stances. The graver, more important or valuable the
interests involved, and the more imminent the peril, the
more is the vigilance required to constitute diligence.
Negligence is the absence or failure of diligence.'' The
criticism upon the instructions is that they fail to tell
the jury that certain acts and omissions constituted
negligence, and would prevent recovery, and instead of
that leave the whole question as one of fact for the jury.
The careful reader of the instruction asked and those
given will find it difficult to justify the criticism in the
light of comparison. The facts as to knowledge of loca-
tion of the road, and that trains were running thereon,
as mentioned in the instruction asked, are treated as
established facts in those given, and the duties as to care
are enjoined, as required with such facts established.
This is certainly not unfavorable to the defendant.
Conceding the frequent running of trains on the road,
and plaintiff's knowledge of the track, it is diffi-
cult to conceive a duty enjoined by law in approaching
the track not imposed by the instructions given. The
argument refers to one particular fact in this connection,

and speaks of it as a reason why the instruction asked should have been given. It is that the testimony shows that plaintiff at the time was expecting the train. If the instruction asked refers to, or gives more prominence to, that fact, than those given, our reading is certainly faulty. To our minds, the instructions given are as definite as to facts as the one asked. We do not desire to be understood as conceding that the instruction asked and refused embodies the rules of law as stated in the *Haines case*. With the views above expressed, it is not important that we determine that question.

IV. A point is argued as to sustaining an objection to a question to one Mitchell, a witness for defendant ; but, from a pencil noting on the margin of appellant's argument, we understand that the point is abandoned, because practically covered by other evidence.

AFFIRMED.