Cora Lenning, Administratrix, Appellant, v. Des Moines & Central Iowa Railroad, Appellee.

No. 39851.

November 21, 1929.

Rehearing Denied February 15, 1930.

*Mulvaney & Mulvaney,* for appellant.

*Corwin R. Bennett,* for appellee.

EVANS, J.—The defendant operates an electric railway line between Des Moines and Perry in this state. It also operates a branch line extending from the main line at the village of Moran northward to Woodward. It also maintains a Y, for the purpose of switching in the near vicinity of the junction between the main line and the Woodward line. The accident under consideration occurred about 4 P.M., March 17, 1928, at a point where the main line intersects a highway upon which the decedent was traveling. The highway extends north and south, and the decedent was traveling south. The railway line extended from northwest to southeast, and the car which collided with the decedent was traveling southerly. The Woodward line crosses the highway in question at a point 675 feet north of the place of collision. The Y crosses the same highway at a point 74 feet north of the point of collision. The main line crosses the highway farther south, as already indicated. It appears, therefore, that there were three intersections of the highway by the lines of railway within a distance of 675 feet. As the decedent was approaching the point of collision from the north, a car on the Woodward line crossed the highway in front of him at the northerly crossing. In ordinary course, this Woodward car would enter upon the Y and cross the highway again to the west at a point 74 feet north of the point of collision, as before indicated. This car, however, stopped at the switch to the Y, and was standing there when the decedent crossed the Y at the intersection. The claim is that the presence of the Woodward car diverted the attention of the decedent in such a way that he failed to see the defendant's car coming from the northwest on the main line, with which car he collided at the southerly intersection. The decedent was driving from 30 to 35 miles an hour, and apparently failed to see or to look towards the approaching car. The plaintiff's petition summarized its charges of negligence as follows:

"First: That the defendant was negligent in surveying, building, maintaining, and operating its line of railroad run-

ning from Woodward, Iowa, to where the same intersects defendant's main line of railroad from Des Moines to Perry, as hereinbefore more particularly outlined and described.

"Second: That, in surveying, building, maintaining, and operating defendant's railroad complained of in the previous paragraph, defendant created an artificial and additional hazard, which was unnecessary and unnatural, and unduly imperiled human life.

"Third: That defendant's motorman had an unobstructed view of plaintiff's decedent's approach to the place where he was injured, as above set forth, for a distance of more than 600 feet, and saw and observed decedent, and by the exercise of ordinary care should have stopped the car and avoided injuring him.

"Fourth: That defendant neglected to give any warning to plaintiff's decedent by either ringing the bell or blowing the whistle of the car which struck and injured him.

"Your plaintiff shows and states to the court that the decedent, Charles E. Lenning, was a temperate, upright, intelligent, and educated man, 54 years of age at the time of his death, and had earned and was capable of earning from $2,500 to $5,000 a year. That he was a married man, and had reared and educated a family of four children, and had accumulated a large amount of personal and real property, but, on account of the late business and financial depressions of the country, his fortune has been largely swept away, and at the time of his death was the owner of little property excepting his homestead, which was of the value of about $6,500."

By a later amendment, the foregoing were amplified as follows: That defendant's car was operated at a high and dangerous rate of speed; that the trainmen gave no signal of any kind of the approach of the car; that the defendant should have brought such car to a "standstill" at the public crossing; and that the defendant should have had a flagman at such crossing.

I. It will be noted that the first and second specifications of negligence complain of the general scheme adopted by the defendant in surveying and laying out its main line and its

 branch and switch line. No standard is suggested to us whereby we may determine whether such a scheme was faulty or otherwise. Nor was there any evidence introduced on the subject. The place involved was in the open country. Moran was a village apparently without population or buildings. It had a mine shaft near by. The surrounding topography was level. The grade of the railway was a little higher than the adjoining ground. There were no artificial obstructions to view. The Y was used for switching purposes, and was used only twice each day: once in the forenoon, and once in the afternoon. At each time, a car was switched from the Woodward line to the main line, or vice versa. We see nothing available to the appellant in these two specifications.

II. It is averred in the third specification that the motorman had a view of the approach to the intersection for a distance of 600 feet. Whether it is meant that the 600 feet should  be measured along the line of the railway or along the line of the highway, is not apparent. The distance is abundant, however, for the purpose of observation along either line. Suppose, however, that the decedent was in plain view of the train while he was 600 feet away from the intersection. Was the motorman bound to assume, at such a distance, that the decedent did not also see the on-coming car? Surely a train is not bound to come to a stop simply because its motorman sees an automobile 600 feet distant from a crossing. Nor should he be required to put on its brakes or to slow down at such a distance. If such a rule were enforced, few trains could pass over a highway without first coming to a stop or near-stop. The allegation in this regard is somewhat extravagant, and tends to negative the very negligence which it seeks to charge.

It did appear in the evidence that, when the car was within 100 feet of the center of the intersection, the motorman saw, for the first time, the approach of the decedent, 150 feet from the same intersection. The motorman put on his emergency brake. But 250 feet was the limit within which he could stop. Such was the testimony of the motorman, who was called as a witness by the plaintiff, and testified as such. The car was a heavy car, and was moving 20 miles an hour. The motorman

was induced to put on the emergency brake because he saw that the decedent was looking eastward, instead of westward, toward the on-coming car. Except for that fact, it could hardly be said that the presence of an automobile approaching a railway crossing 150 feet therefrom afforded much of a warning to a motorman that a collision was imminent.

III. The fourth specification was failure to ring the bell or give signal. The motorman, as plaintiff's witness, testified positively that he was both ringing the bell and sounding the  whistle; that these signals were first given a thousand feet away from the crossing; and that they were in actual operation at the time he first saw the decedent. In contradiction of this, the plaintiff introduced the testimony of three witnesses to the effect that they did not hear or notice any signals. The chief of these were Mr. and Mrs. Stevenson, who had driven up to the same intersection and stopped for the car to pass by. They were engaged in conversation as the car approached. They testified that they gave no thought to the subject of signals, and the most that they could say was that they had not noticed any. We have held repeatedly that such testimony does not create a conflict of evidence. *Payne v. Chicago & N. W. R. Co.*, 108 Iowa 188; *Hoffard v. Illinois Cent. R. Co.*, 138 Iowa 543; *Bowery v. Wabash R. Co.*, 185 Iowa 288; *Baker v. Des Moines City R. Co.*, 199 Iowa 1256.

IV. It is further urged that the crossings herein described were extra-hazardous, and that for that reason they should have been guarded by a flagman, and that cars should have been required to come to a full stop thereat.

All railroad crossings are hazardous, and call for the exercise of great care, both on the part of the corporation and of users of the highway. In the avoidance of collisions, the advantage is with the automobile driver. His vehicle is the lighter one, and may be brought to a quicker stop. His means of observation of an approaching train are usually better. Of necessity, the right of way in approaching such an intersection must be given to the heavier vehicle. The stopping of an automobile is a light task, as compared with the stopping of a train. There is no claim that the decedent did not see or know of the

existence of the crossing. Even a flagman would not have aided him, because he was looking in the other direction. Moreover, the train was in clearer view than the flagman could have been. Nor do we discover any evidence in the record which would have justified the jury in saying that a flagman should have been maintained. *Glanville v. Chicago, R. I. & P. R. Co.,* 190 Iowa 174; *O'Brien v. Chicago, R. I. & P. R. Co.,* 203 Iowa 1301.

In short, we fail to find any evidence in the record in support of the allegation of negligence either before or after the discovery of the approach of the decedent toward the crossing. Whether the decedent should be charged with contributory negligence, we need not consider. It is doubtless true that his attention for the moment was concentrated upon the Woodward car, which had crossed the northerly crossing ahead of him. It was due to pass over the Y, which involved the next crossing. The decedent seems to have formed a purpose to make the next crossing first. He appears to have had abundant margin for that purpose. Whether this diversion of his attention should be deemed effective to rebut the claim of contributory negligence is not necessary to our consideration, in view of the absence of negligence on the part of the railroad company. The case is a sad one, and commands our close scrutiny of the record.

We reach the conclusion that the district court ruled properly, and its order is, accordingly,—*Affirmed.*

ALBERT, C. J., and FAVILLE, DE GRAFF, and KINDIG, JJ., concur.