MILDRED L. STROM, appellant, v. DES MOINES AND CENTRAL IOWA RAILWAY COMPANY, appellee.

No. 49130.

(Reported in 82 N.W.2d 781)

1054

MAY 7, 1957.

REHEARING DENIED JUNE 25, 1957.

Duffield & Pinegar, of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

GARFIELD, J.—This is a law action to recover for serious personal injuries sustained by plaintiff, Mrs. Strom, age 36, in a collision between the 1948 Ford automobile she was driving and a freight train of defendant. There was a jury verdict for

plaintiff for $16,000.. Upon return of the verdict the trial court on his own motion entered judgment for defendant, based on plaintiff's contributory negligence, notwithstanding the verdict.

Upon this appeal by plaintiff the contention most vigorously urged is that the issue of freedom from contributory negligence was one of fact for the jury, not of law for the court. This is so, it is said, because the view of the railroad was obstructed and there were diverting or complicating circumstances calculated to deceive or throw a motorist off his guard.

Of course it is our duty to consider the evidence in the light most favorable to plaintiff. Kinney v. Larsen, 239 Iowa 494, 496, 31 N.W.2d 635, 636; Sterlane v. Fleming, 236 Iowa 480, 488, 18 N.W.2d 159, 164.

The collision occurred about 11:30 p.m., May 6, 1955, at a crossing by defendant's track of state highway 141 (Merle Hay Road) in the village of Johnston, northwest of Des Moines. The highway there runs north and south, the railroad northwest and southeast. The angle northwest of the crossing between the highway and the track appears to be about 25 degrees. Plaintiff was alone driving north. The train was going southeast. The forward end of the Diesel locomotive struck the Ford at the crossing and carried it about 250 feet southeast before it came to a stop.

For about 1150 feet northwest from the crossing the track runs parallel to, and about 60 feet on the northeasterly side of, state highway 64. The highway on which plaintiff drove north is marked both 141 and 64 up to a point about 60 feet south of the railroad crossing, where 64 turns northwest and 141 continues straight on. Plaintiff approached this point, at about 25 to 30 miles per hour, behind about five other automobiles, rather close together, which turned northwest on 64. No cars were coming from the north on 141, but automobiles were traveling southeast on 64 toward its junction with 141. The headlights of one of these were on the high beam and this car reached the highway junction about as plaintiff left it to continue north on 141.

Plaintiff testifies that as she approached the point where 64 left 141 her attention was directed toward the traffic of other automobiles, those ahead of her and those coming from the

northwest on 64; she was looking toward the tracks when she left the highway junction; she looked to be sure there were no cars coming from the north; the car windows on the driver's side were open; her headlights were on low beam; she heard no whistle or bell; her hearing was good; she does not know what happened at the railroad crossing except the train hit her; she did not see or hear it before the collision but did see the headlight just before the collision.

There is a small café 10 to 12 feet high on the railroad right of way southwest of the track. A deputy sheriff says it is 55 to 60 feet west of the crossing. A civil engineer called by defendant measured 85 feet between the café and the pavement on 141 at the crossing. About this same distance northwest of the café is another one-story building on the right of way. There is a sign between the two buildings. The train ran on the northeast side of these buildings. Along the northeast side of highway 64 is a row of light poles fairly close together. There is space to park automobiles between the café and the crossing, southwest of the track. The deputy sheriff testifies photographs which show four motor vehicles parked in this space "are fairly accurate representations of the area as it appeared May 6, 1955." In this same space are two small round soft-drink signs, each at the top of a post.

Between the railroad crossing and the junction of 64 and 141, on the west side of 141, is a gravel short cut between the two highways for southbound traffic on 141 about to turn northwest on 64 and southeast-bound traffic on 64 about to turn north on 141. In the triangle formed by this short cut, 141 and 64, is a stop sign about five feet high. Just west of highway 141, northeast of the railroad, is a large neon lighted sign, 30 to 35 feet high, of a lumber company. At the top center of the sign is a revolving light that flashes on and off.

Plaintiff was familiar with the crossing. She had driven over it twice the afternoon of that day and again a few minutes before the collision. She testifies, however, "As far as I was concerned that was an obsolete track. I've never seen a train on it and I'd been up there lots of times and the condition of it gives you the feeling it is obsolete." A witness who lived about

three blocks from the crossing for nine months just before the collision says she crossed the track often and never saw a train there. A crossbar sign bearing the words "Railroad Crossing" was in place along 141 both north and south of the crossing. The south sign needed paint. There was also a railroad sign some distance south of the south crossbars.

Actually defendant ran one freight train each way every 24 hours except Sunday. On rare occasions it ran an extra. The trains usually operated at night. There were no passenger trains. The trains ran between Des Moines and Granger or Perry, northwest of Granger. There were 14 cars on the train in question.

We will later refer to some other evidence. The accompanying photograph, somewhat reduced in size from an exhibit offered by defendant, may help visualize the surroundings at the crossing *in daylight.*

I. Under the peculiar facts of this case we think the issue of plaintiff's freedom from contributory negligence was one of fact for the jury, not of law for the court.

As plaintiff approached the point where highway 64 turns northwest off Merle Hay Road it was natural and reasonable that her attention was mainly directed toward the motor-vehicle traffic. Five automobiles (defendant's engineer says five to seven) turned left on 64 just ahead of plaintiff at this highway junction. She was sufficiently alert to be aware of the movement of these cars.

At least one automobile on 64 approached plaintiff at an angle of only 25 degrees from straight north. Its lights were on high beam and naturally interfered with her vision. It reached the junction just as plaintiff was leaving it. While these five or more cars were making left turns just ahead of her they not only occupied her attention but obstructed her view, at least in part, to the north and northwest. It cannot fairly be said plaintiff was contributorily negligent as a matter of law prior to the time she left the highway junction.

As soon as these automobiles completed their left turns and plaintiff had an unobstructed view to the north it was reasonable for her to look for traffic on 141 from that direction. The

danger to her was very much greater from motor vehicles than from a single train approaching from the northwest at an unscheduled time during the 24 hours. Deputy Sheriff Peterson, a former state highway patrolman, who patrolled this area, testifies that even between 11:30 and 2:00 at night traffic at this point was heavy to moderate.

After making sure there were no cars approaching from the north plaintiff says she looked toward the railroad tracks, she saw no train, her hearing was good, she heard no whistle, bell or other audible warning of the train's approach. The surroundings were not such it may be said as a matter of law she must have seen the train if she looked. There were other obstructions to her view and other diverting circumstances.

The jury could properly find the brilliantly lighted lumber sign just northwest of the crossing was a diverting circumstance. As stated, a revolving light at the top of the sign flashed on and off, obviously to attract attention of passing motorists. Further, the bright lights of this large sign materially lessened the warning effect of the headlight on the locomotive.

Traveling at 25 miles per hour plaintiff covered the 60 feet between the highway junction and the railroad crossing in less than $1\frac{2}{3}$ seconds. If she was going 30 miles per hour she traveled the distance in less than $1\frac{1}{2}$ seconds. (Defendant's head brakeman in effect agrees with plaintiff's estimate of her speed. This was a 35 miles per hour zone.) Part of this time was reasonably taken up with looking for motor-vehicle traffic. If plaintiff is to be held contributorily negligent as a matter of law it would seem to be due to her conduct during this brief interval of time and space.

We have at least twice approved the statement, " 'To predicate negligence on two seconds of time is in and of itself a monumental refinement.' " Koob v. Schmolt, 241 Iowa 1294, 1299, 45 N.W.2d 216, 218; Menke v. Peterschmidt, 246 Iowa 722, 733, 69 N.W.2d 65, 72. In resistance to plaintiff's contention the last-clear-chance doctrine is applicable (considered in Division III hereof) defendant argues in effect, we think with reason, it did not have time to be negligent after plaintiff left the highway junction.

■ Certainly plaintiff is not to be held to a higher standard of care than defendant. In fact Pappas v. Evans, 242 Iowa 804, 814, 815, 48 N.W.2d 298, 304, 305, states:

■ "Contributory negligence of a plaintiff is not to be measured by the degree of care defendant owes him. Tate v. Canary Cottage, 302 Ky. 313, 194 S.W.2d 663, 665.

"We must not confuse plaintiff's duty of looking out for his own safety with the duty owed by the railroad company to avoid injury to travelers on the highway at railroad crossings. Were the company being sued by Evans (defendant here) for damages suffered by him there would be involved a higher degree of care on the part of the railroad men on the motorcar because of the responsibility resting on the company to safeguard the public. But we are concerned here with the care plaintiff owed *to himself.*"

In the Pappas case, Evans was the motorist as plaintiff is here. Lauman v. Dearmin, 246 Iowa 697, 703, 69 N.W.2d 49, 53, cites Pappas v. Evans for the proposition that freedom from contributory negligence "is not to be measured by the degree of care a defendant owes him [plaintiff]." See also Brewer v. Johnson, 247 Iowa 483, 486, 72 N.W.2d 556, 558.

However this may be, we repeat, plaintiff is surely not chargeable with a higher degree of care than is required of defendant. If, as defendant argues and we hold in Division III, there was not sufficient time after plaintiff left the highway junction to permit a jury finding that defendant by the exercise of ordinary care could have avoided the collision, it would seem there was insufficient time during such interval for plaintiff to be contributorily negligent as a matter of law.

See at this point Butterfield v. Chicago, R. I. & P. Ry. Co., 193 Iowa 323, 327, 328, 185 N.W. 151, 153, where without looking plaintiff traveled 40 to 70 feet in not to exceed three or four seconds. We said, "* * * it would be a very drastic holding to say that a driver * * * is to be conclusively chargeable with negligence because for an instant his eye was not exploring the distance for an unheralded danger."

There are other matters properly to be considered on the

issue of freedom from contributory negligence. Plaintiff's belief the railroad crossing was abandoned, brought out on defendant's cross-examination of her, if the belief was reasonable, is entitled to consideration. Testimony of the lady who lived near the crossing and traversed it often that she had never seen a train on it as well as the fact it was used only once in 24 hours by a train in each direction, six nights a week, tends to show plaintiff's belief was reasonable.

Under our repeated decisions plaintiff was entitled to assume that if the crossing was not abandoned the railroad would exercise ordinary care and comply with requirements of law in warning her of the approach of a train. She was not compelled to anticipate negligence of the railroad. Saeugling v. Scandrett, 230 Iowa 153, 156, 296 N.W. 787, 788; Anderson v. United States R. Admn., 203 Iowa 715, 717, 211 N.W. 872; Nederhiser v. Chicago, R. I. & P. R. Co., 202 Iowa 285, 290, 291, 208 N.W. 856; Barrett v. Chicago, M. & St. P. Ry. Co., 190 Iowa 509, 515, 175 N.W. 950, 180 N.W. 670; Butterfield v. Chicago, R. I. & P. Ry. Co., supra, 193 Iowa 323, 328, 185 N.W. 151, and citations. See also Sterlane v. Fleming, 236 Iowa 480, 491, 18 N.W.2d 159, 165; 75 C. J. S., Railroads, section 791.

Of course failure to signal approach of the train did not relieve plaintiff from exercising ordinary care for her own safety but testimony tending to show signals were not given is, under the decisions just cited and many others, properly to be considered on the issue of freedom from contributory negligence.

Many of our railroad-crossing cases point out in substance that precedents are of little value because the facts control and they differ. Sterlane v. Fleming, supra, 236 Iowa 480, 489, 18 N.W.2d 159, 165; Tegtmeyer v. Byram, 204 Iowa 1169, 1175, 216 N.W. 613; Hines v. Chicago, M. & St. P. R. Co., 196 Iowa 109, 115, 194 N.W. 188; Lutz v. Davis, 195 Iowa 1049, 1054, 192 N.W. 15; Waring v. Dubuque Electric Co., 192 Iowa 508, 513, 185 N.W. 130.

Our decisions contain numerous pronouncements like this from Leinen v. Boettger, 241 Iowa 910, 926, 44 N.W.2d 73, 82: "* * * the issue of freedom from contributory negligence * * * is usually one of fact and not of law and is peculiarly and

ordinarily for the determination of the jury, and that it is only in the rare and exceptional case and where the lack of reasonable care is so manifest, flagrant, palpable that reasonable minds may fairly reach no other conclusion, that the question is one of law for the court. It is ordinary care, and not the highest degree of care, that is required. [Citations.]"

Among the citations given for the above quotation are Kinney v. Larsen, supra, 239 Iowa 494, 498, 31 N.W.2d 635, 637, and Markle v. Chicago, R. I. & P. Ry. Co., 219 Iowa 301, 308, 257 N.W. 771, both railroad-crossing cases. Similar language is found in Thompson v. Waterloo, C. F. & N. R. Co., 243 Iowa 73, 78, 79, 50 N.W.2d 363, 366, and Hines v. Chicago, M. & St. P. R. Co., supra, 196 Iowa 109, 116, 194 N.W. 188, other railroad-crossing cases. See also Miller v. Griffith, 246 Iowa 476, 479, 66 N.W.2d 505, 507.

Kinney v. Larsen, supra, states (at page 500 of 239 Iowa, page 638 of 31 N.W.2d) that in general we have held, where the traveler's view of the crossing is obstructed " 'so as to render it impossible or difficult to learn of the approach of a train' " or there are diverting circumstances which tend to throw the traveler off his guard, the question of freedom from contributory negligence is for the jury. But where the view of the crossing is unobstructed and there are no diverting circumstances a plaintiff, especially one who is familiar with the crossing, is ordinarily denied recovery on the ground of contributory negligence.

█ Applying this language here the issue of freedom from contributory negligence was for the jury. It is obvious plaintiff's view of the crossing was obstructed. There were also diverting circumstances which reasonably tended to throw her off her guard—particularly the other cars making left turns just ahead of her, the blinding lights of the automobile approaching from the northwest, and the brilliantly lighted lumber sign with its revolving, flashing light, designed to attract attention. That these were diverting circumstances see Hawkins v. Interurban R. Co., 184 Iowa 232, 241, 168 N.W. 234; Butterfield v. Chicago, R. I. & P. Ry. Co., supra, 193 Iowa 323, 328, 185 N.W. 151; Lutz v. Davis, supra, 195 Iowa 1049, 1055, 192 N.W. 15; Hines

v. Chicago, M. & St. P. R. Co., supra, 196 Iowa 109, 115, 194 N.W. 188; Nederhiser v. Chicago, R. I. & P. R. Co., supra, 202 Iowa 285, 290, 208 N.W. 856.

This crossing is not like the ordinary railroad crossing in the open country. It is more like a railroad crossing over a city street. While Johnston is a small community it is very close to Des Moines and well within the suburban area of that city. At this point Merle Hay Road is a continuation of a heavily traveled Des Moines street over which arterial highway traffic moves in and out of Des Moines. This from Marnan v. Chicago, R. I. & P. Ry. Co., 156 Iowa 457, 461, 462, 136 N.W. 884, 885, has application here:

"A collision with a railway train upon a highway crossing on the open prairie, where no watch or guard is kept or can reasonably be expected, and where a person approaching on the highway has an unobstructed view of the track for a long distance, is one thing. A collision upon the street of a crowded city, where speed of trains is regulated by law or ordinance, where gates and flagmen are a reasonably necessary provision for public safety, where the highway is used by hundreds if not thousands of people every day, and where an open view of the track for any considerable distance is not ordinarily obtainable until the traveler is within or very near the zone of danger, is quite another thing. In the former case one can hardly conceive how a person using the highway and being in full possession of his physical and mental powers can be injured by a passing train without the most obvious negligence on his part. In the latter case it is by no means difficult to understand how sometimes a traveler of experience and intelligence may be run down and injured without being conclusively chargeable with want of reasonable care for his own safety."

Of course we express no opinion on whether plaintiff was free from contributory negligence. We hold merely she was not contributorily negligent as a matter of law and, as in most cases, the issue was one of fact for the jury.

II. Defendant seeks to uphold the trial court's ruling by arguing no negligence on its part was shown. This was a ground of defendant's motion to direct verdict and it is entitled

to argue it here although the judgment notwithstanding verdict was not placed on this ground. Emmert v. Neiman, 245 Iowa 931, 934, 65 N.W.2d 606, 608, and citations.

Four charges of negligence against defendant were submitted to the jury—failure to: (1) ring a bell, blow a whistle or warn plaintiff of the train's approach, (2) operate the train at a careful and prudent speed, having regard to the motor-vehicle traffic and other existing conditions, (3) maintain proper warning signs or signals at the crossing under the existing circumstances, and (4) keep a proper lookout.

■ We find no substantial evidence of this fourth charge and it should not have been submitted to the jury. As pointed out in Division III hereof two of defendant's trainmen testify in substance they saw plaintiff as soon as the cars ahead of her turned off on 64. There is no evidence to the contrary. Until plaintiff continued north from the highway junction the trainmen had no way of knowing she would not turn onto 64 as the other automobiles did. There was no lack of care shown in keeping a lookout.

We think too there is insufficient testimony to support the second charge of excessive speed. The engineer says the train was going 10 to 12 miles an hour when the emergency brakes were applied at the west edge of the crossing. Although doubt may be thrown on this evidence by the fact the train traveled some 250 feet or more after these brakes were applied (when four of the 14 cars were empty) we are unable to find substantial support for this charge.

We hold the evidence warranted submission of the first and third charges of negligence. The judgment notwithstanding verdict therefore cannot be upheld on the ground no negligence of defendant was shown although it was error to submit the second and fourth charges of negligence.

■ As previously indicated, plaintiff testifies she had it on her mind there was a railroad crossing ahead of her, she heard nothing in the nature of a whistle or bell, she never had any hearing difficulties, it has always been good, her car windows were down on her side, there were no bells ringing there at the crossing that she heard—"I did not receive any warning

of any kind before the collision that there was a train on the track." There is no evidence of unusual noise or anything to prevent plaintiff from hearing the signals if they had been given.

Section 478.19, Code, 1954, provides in substance that a whistle shall be twice sharply sounded at least 60 rods before a road crossing is reached and then the bell shall be rung continuously until the crossing is passed. Defendant seems to concede it was required to comply with this statute. Whether it did so was a jury question under this record.

Defendant's engineer says he gave the usual crossing whistle before he came to a crossing about 1150 feet northwest of the crossing in question, he turned on the bell just before he came to this north crossing, it was still ringing after the train stopped, he sounded the whistle twice for Merle Hay Road—first about at the lumberyard—and "I held the whistle down clear across the crossing. That was after I saw this car coming onto the track." The lumberyard is very close to the crossing in question. On cross-examination this witness admits he told plaintiff, sometime after the collision, he "blew the whistle because we were going to collide" and that is when he applied the emergency brake—after he realized they were going to collide.

Defendant's head brakeman in general corroborates the engineer as to sounding the whistle and ringing the bell. Two other trainmen riding in the caboose say they heard the whistle at the north crossing and again before the crossing in question was reached. One of them testifies in substance the bell cannot be heard in the caboose.

Defendant called two other witnesses who were in the vicinity of the crossing at the time. Both say they heard a whistle. Neither testifies to hearing a bell. One says the whistle he heard, the sound of applying the brakes and the thud of the collision were pretty close together—"kind of in succession." The other witness testifies, "I do not know when the whistle was blown in connection with the accident." It is clear the jury could properly find the whistle each of these witnesses heard was the one given after the collision was unavoidable and it

did not comply with the statute. Of course it is fundamental in any event that the preponderance of the evidence is not determined by the number of witnesses testifying to a given proposition.

Defendant relies upon Lenning v. Des Moines & Central Iowa Railroad, 209 Iowa 890, 894, 227 N.W. 828, 830, and citations, which hold under the particular facts that evidence of witnesses who say they did not hear signals does not create a conflict with positive testimony signals were given in compliance with statute. In the Lenning case the witnesses relied upon to prove failure of signals were conversing as defendant's car approached and testified (page 894 of 209 Iowa), "they gave no thought to the subject of signals, and the most that they could say was that they had not noticed any."

We think the facts here are not such that the cited precedents are controlling or applicable under our own decisions or those generally. This subject is exhaustively considered in the annotation to Kindt v. Reading Co., 352 Pa. 419, 43 A.2d 145, 162 A. L. R. 1, commencing page 9. At pages 103 to 107 numerous cases, including several of our own, are cited for this proposition and a related one: "Statements on the witness stand (in some instances corroborated by similar testimony), by persons who were in vehicles as a train approached the crossing and who were shown to have been listening or otherwise attentive, that they did not hear signals frequently have been held to have sufficient probative force to sustain a finding that signals were not given."

Kindt v. Reading Co., supra, reverses a judgment for defendant, notwithstanding verdict for plaintiff, entered on the ground the testimony was insufficient to raise a conflict with positive evidence signals were given. In some respects the Kindt record was apparently weaker from plaintiff's standpoint than that here. "The parties were traveling with the windows closed." Here plaintiff's windows on her side were open. The occupants of the Kindt automobile did not know the crossing existed. Here plaintiff knew the crossing was there. On this point the court holds (page 423 of 352 Pa., page 147 of 43 A.2d, page 5 of 162 A. L. R.) : "Of course, the fact that these plaintiffs did not know that they were near a railroad crossing

tends to support the argument that they were not attentive to signals, but it does not conclusively establish the fact that their testimony as to the absence of signals was negative."

The Pennsylvania court also points out (page 426 of 352 Pa., page 149 of 43 A.2d, page 7 of 162 A. L. R.) testimony of some witnesses that they heard no whistle may have more probative value than statements of other witnesses that no whistle was blown. Further, "Judging the credibility of a witness and the weight of his testimony is pre-eminently a jury's function."

75 C. J. S., Railroads, section 859, page 171, states: "If the position and attention of such witnesses were such that they probably would have heard the signals had they been given, their testimony, even that of a single witness, to the effect that the signals were not given, may be sufficient to establish that fact even where such testimony is opposed by positive testimony that the signals were given."

Our latest railroad-crossing case to consider a like question is Frideres v. Lowden, 235 Iowa 640, 645, 647, 17 N.W.2d 396, 399, 400. While the facts there are somewhat stronger than they are here on the issue of failure to signal, we think the decision and the precedents there cited support our conclusion here. See also Lee v. Chicago, R. I. & P. Ry. Co., 80 Iowa 172, 45 N.W. 739. The Frideres case is cited with approval on this point in Cunningham v. Court, 248 Iowa 654, 660, 82 N.W.2d 292, 295, 296, which, however, involved a collision between two motor vehicles.

With reference to the third charge of negligence it seems to be well settled in Iowa and many other jurisdictions that a railroad may be required in the exercise of due care to provide some warning signal of the approach of a train other than the whistle and bell required by statute when the crossing is more than ordinarily dangerous and it is essential to the reasonable protection of travelers on the highway. Glanville v. Chicago, R. I. & P. R. Co., 190 Iowa 174, 181, 182, 180 N.W. 152; St. Louis-San Francisco Ry. Co. v. Prince, 145 Okla. 194, 291 P. 973, 71 A. L. R. 357, and annotation 369; Annotation 5 A. L. R.2d 112, 133; 44 Am. Jur., Railroads, section 520; 75 C. J. S., Railroads, section 867b.

 Whether in a particular case the crossing is such as to require an additional signal, like gates, flashing lights, bell, gong or other device, is a question for the jury unless reasonable minds could reach only one conclusion thereon from the evidence. See Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 370, 371, 30 N.W.2d 120, 127; Bradley v. Interurban R. Co., 191 Iowa 1351, 1356, 183 N.W. 493; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 419–428, 12 S. Ct. 679, 36 L. Ed. 485, 490, 492; Annotation 60 A. L. R. 1096, 1106; also authorities last above.

 We are clear the jury could properly find under the evidence here this crossing was more than ordinarily dangerous so defendant should have provided some signal of the approach of its trains other than the signals required by statute. Our conclusion is fully supported by Lindquist v. Des Moines Union Ry. Co., supra, and citations at page 371 of 239 Iowa, page 127 of 30 N.W.2d; Platter v. Minneapolis & St. L. R. Co., 162 Iowa 142, 147, 143 N.W. 992; Koop v. Great Northern Ry. Co., 224 Minn. 286, 28 N.W.2d 687, 694; Carbone v. Boston & Maine R.R., 89 N. H. 12, 15, 192 A. 858, 861.

 III. Plaintiff assigns as error the trial court's refusal to submit to the jury the doctrine of last clear chance. Plaintiff pleaded facts making it applicable. If the evidence warranted submission of this theory it should have been submitted for determination of the jury in the event plaintiff was found guilty of contributory negligence. And this is true although plaintiff also alleged other acts of negligence against defendant together with her freedom from contributory negligence. Crowley v. Burlington, C. R. & N. R. Co., 65 Iowa 658, 664, 20 N.W. 467, 22 N.W. 918; Cahill v. Chicago, M. & St. P. Ry. Co., 143 Iowa 152, 160, 121 N.W. 553; Glover v. Vernon, 226 Iowa 1089, 1100, 285 N.W. 652; Gearhart v. Des Moines Ry. Co., 237 Iowa 213, 220, 21 N.W.2d 569, 573; St. John v. Nichols, 331 Mich. 148, 49 N.W.2d 113, 116; 37 Iowa Law Review 309, et seq.; Annotation 25 A. L. R.2d 254, 281. (The Crowley case is disapproved on a point not here presented in Steele v. Brada, 213 Iowa 708, 712, 239 N.W. 538, 540.)

The doctrine of last clear chance presupposes plaintiff's contributory negligence. Lauman v. Dearmin, supra, 246 Iowa 697, 703, 704, 69 N.W.2d 49, 53, and citations; Menke v. Peterschmidt, supra, and citations, page 728 of 246 Iowa, page 70 of 69 N.W.2d. It applies where defendant (1) has actual knowledge of plaintiff's situation, (2) realizes or should in the exercise of reasonable care realize he is in peril, (3) has the ability to avoid injury to plaintiff thereafter and, of course (4) fails to do so. See Menke v. Peterschmidt, supra, 246 Iowa 722, 725, 726, 69 N.W.2d 65, 68, 69, and citations; article by Harry G. Slife, 34 Iowa Law Review 480, 485. See also Restatement, Torts, sections 479, 480.

Defendant's engineer and head brakeman testify they saw plaintiff's car as it came north from the highway junction 60 feet south of the railroad crossing. Defendant may not be charged until then with realization of her peril. The trainmen could not sooner know she would not turn northwest on 64 like the cars ahead of her. Plaintiff's argument in support of the last-clear-chance doctrine is largely based on testimony of the brakeman that nothing indicated to him plaintiff was going to stop and of both these trainmen that the emergency brakes were not applied until the locomotive reached the west edge of the crossing (i.e., the pavement on 141) and before then the engineer just hoped plaintiff would stop in time. It is not claimed the train could have been stopped before plaintiff reached the crossing, but she says its speed could have been reduced so she could have crossed it safely.

We are agreed this evidence is insufficient basis for application of the last-clear-chance rule. As stated, plaintiff was traveling 25 to 30 miles per hour. She covered the distance between the highway junction and the railroad crossing in less than two seconds, perhaps less than 1½ seconds. There was no appreciable time within which the trainmen, even if they realized plaintiff's peril as soon as possible, could by the exercise of reasonable care stop the train or otherwise avoid the collision. Any finding that defendant could have averted the injury after realization of plaintiff's peril would, at best, be largely based on conjecture.

What is said in Division I that "To predicate negligence on two seconds of time is * * * a monumental refinement" is appliable at this point. Although Menke v. Peterschmidt, supra, 246 Iowa 722, 733, 69 N.W.2d 65, 72, involved a collision between two motor vehicles at an intersection, it is clear a holding the last-clear-chance doctrine applies here would conflict with the cited decision. There was not time for defendant to be negligent after discovering plaintiff's predicament. It did not thereafter have the last *clear* chance to avoid the collision.

Other authorities support this view. The injured party may not ordinarily invoke the last-clear-chance doctrine where there is a collision between his moving motor vehicle and a train at a crossing. Such a vehicle approaching a railroad does not usually reach a position of danger until it can no longer be stopped or turned aside and there is seldom appreciable time thereafter for the trainmen, in the exercise of ordinary care, to avoid the collision. Johnson v. Sacramento Northern Ry., 54 Cal. App.2d 528, 129 P.2d 503, 505, 506; Rollison v. Wabash R. Co., 252 Mo. 525, 160 S.W. 994; Holmgren v. Union Pac. R. Co., 114 Utah 262, 198 P.2d 459, 463; 75 C. J. S., Railroads, section 814d, page 94. See also Arp v. Illinois Cent. R. Co., 230 Iowa 869, 299 N.W. 413, and citations; Mast v. Illinois Cent. R. Co., D.C. Iowa (Judge Graven), 79 F. Supp. 149, 160, 164; St. Louis, S. W. R. Co. v. Simpson, 286 U. S. 346, 351, 52 S. Ct. 520, 522, 76 L. Ed. 1152, 1155.

We have preferred to dispose of the issue of last clear chance without reference to whether plaintiff's charge that defendant failed to keep a proper lookout negatives application of the doctrine. See on this Reynolds v. Aller, 226 Iowa 642, 648, 284 N.W. 825, 828.

IV. It follows from Divisions I and II hereof it was error to enter judgment for defendant notwithstanding verdict. We might perhaps order the verdict reinstated with leave to defendant to file motion for new trial. (See Brown v. City of Sioux City, 242 Iowa 1196, 1207, 49 N.W.2d 853, 859; Smith v. Darling & Co., 244 Iowa 133, 145, 56 N.W.2d 47, 53, 54.) Defendant had no occasion to file such a motion in view of the court's disposition of the case on his own motion.

Since we have held it was error to submit the second and fourth charges of negligence plaintiff should not have judgment on the jury's verdict and defendant should not be required to move for a new trial in the district court. Accordingly the cause is reversed and remanded for a new trial.—Reversed and remanded.

BLISS, C. J., and OLIVER, WENNERSTRUM, THOMPSON, and LARSON, JJ., concur.

PETERSON, SMITH and HAYS, JJ., dissent.

PETERSON, J.—I respectfully dissent.

I approve Division III of the majority opinion which holds the doctrine of last clear chance is not effective under the facts of this case.

I approve the provision in the majority opinion in Division II, which provides that charges (2) and (4) as to negligence on the part of defendant shall not be submitted to the jury when the case is tried again. I concede the matter of submission to the jury of charges (1) and (3), although I have serious doubts concerning both of them. As to charge (1), on the question of the blowing of the whistle, there are six witnesses testifying the whistle was blown; true, four of them were railroad men on the train. The only evidence to the contrary is the evidence of plaintiff as follows: "Q. Did you hear anything in the nature of a whistle or a bell? A. No." As to charge (3), concerning flagman or maintenance of signal, I question gravely as a jury question the obligation of a railroad company to maintain this service in a small business suburb, and on a road which is not one of the main highways across the state. However, in view of the many cases in which we have held it is our duty to consider the evidence in the light most favorable to plaintiff, I concede that as to these two charges there is basis for submission to the jury. Kinney v. Larsen and Sterlane v. Fleming, both supra. (Both cited in majority opinion.)

However, in my opinion, we do not reach Division II on the question of negligence of defendant. The question of

whether or not contributory negligence, so ably discussed in Division I of the majority opinion, is for the jury or the court, is decisive of the case.

A brief description of the triangle area involved in the facts of this case is of value in connection with analyzing plaintiff's actions in connection with the collision. The highway known as Merle Hay Road runs north and south through the small suburban business district known as Johnston. Proceeding north this becomes highway 141. In the northerly part of the Johnston area one of the principal highways of the state, No. 64, turns away from the Merle Hay Road to the northwest. North of this junction point, and between the two highways, is a small triangle area. Defendant-railroad runs parallel to and about 60 feet west of highway 64 for more than 1000 feet north of the triangle. About 60 feet north of the apex of the triangle defendant railroad runs across highway 141. It is on this railroad crossing, in the right-hand lane of highway 141 that the collision occurred. On highway 64 southwest of the railroad and about 85 feet west of the crossing in question appears a small one-story building known as Tiny's Café and some other small buildings. To the north of the railroad and facing highway 141 is a lumberyard, which displays a neon sign, the lighted part of which is 30 or 35 feet above the ground. In the area between Tiny's Café and the west side of highway 141 is a small area across which runs a gravel road, between the two main highways, and a small parking area with room for a few cars.

I differ with the majority opinion as to one vital and important matter. That is the distance between the point of collision at the crossing, and the point at which plaintiff could have had a clear view of the bright headlight of the engine if she had looked. This point was when she emerged after at least five cars ahead of her had turned to the northwest on highway 64. The majority opinion assumes this was 60 feet. Neither the photographic evidence nor oral testimony sustains this distance. The question of presence of contributory negligence as a matter of law or as a jury question depends on this fact. The majority recognizes this in stating: "If plaintiff is to be held contributorily negligent as a matter of law it would seem to be due to

her conduct during this brief interval of time and space." (According to the majority opinion, 60 feet.) There are two matters in the evidence which show the distance involved was much farther than 60 feet. In fact, the evidence indicates a distance of from 150 to 175 feet. The first factor involves close scrutiny of the photograph, Exhibit 1, a copy of which appears in the majority opinion, and Exhibits 2 and 5, shown in the record. At least five cars preceding plaintiff turned to the left and into highway 64 at a substantial distance before reaching the apex of the triangle formed by the junction of highways 64 and 141. As a matter of practical knowledge it would be preposterous to assume the cars in the procession ahead of plaintiff moved up opposite the apex of the triangle and then made an abrupt square turn to the left over to highway 64, with plaintiff emerging at that point. We know as a fact they moved in a gradual circle out of the right-hand lane of highway 141 into the right-hand lane of No. 64. This means they would move away from in front of plaintiff at least 80 or 90 feet south of the apex of the triangle. Added to 60 feet this equals 140 or 150 feet from place of collision to point where plaintiff, if properly alert and looking, could see the bright headlight of the engine.

As to the oral testimony concerning the matter, we start with the premise that plaintiff never did testify as to how far it was from the point of collision to the point at which the five cars ahead of her left the right-hand lane of highway 141. There is definite testimony in the case concerning the situation. William A. Parrish, head brakeman on the train, was riding in the cab at the front of the engine with the engineer. He testified: "I would estimate roughly that the engine was something under 50 feet from the crossing to Merle Hay when the car involved in the accident emerged from the lane of traffic." Since he said "something under" let us be conservative and call it 40 feet. Since the track crosses the road at an angle, it was at least 30 feet from the west edge of the Merle Hay Road (same as highway 141 at that point) to the point of collision in right-hand lane. This means the train traveled 70 feet at 10 to 12 miles per hour (we will call it 12 miles) from the point at which Mr. Parrish saw plaintiff

emerge from the lane of traffic to the point of collision. This was 17½ feet per second, or 4 seconds. Plaintiff, according to her own testimony, was traveling 30 miles per hour. This is 44 feet per second and on that basis when Mr. Parrish saw her clear the lane of traffic she was 4 seconds in time, or 175 feet in distance, from the point of collision. According to the undisputed evidence of the witness, Clifford O. Swanson, who had made a study of speed stoppage, at 30 miles an hour she could stop in 83 feet. In other words, if she had been alert and watchful when approaching the railroad crossing, she could have stopped at from 30 to 50 feet before arriving at the crossing. If she had simply looked ahead she could have seen the light from the engine headlight. It was a very bright light. The undisputed evidence is that it could spot a man on the track ahead at from 500 to 700 feet. The train had moved 30 or 40 feet away from back of Tiny's restaurant, which was 85 feet from the crossing. The headlight of the engine was completely in the clear. Exhibit 2 in the record is a photograph taken in the dark of night, about the same hour as time of collision. The picture was taken 142 feet south of the crossing, which is somewhat near plaintiff's point of emergence from back of the cars. The headlight of the engine shows clearly at 216 feet northwest of the center of the crossing. On night of collision the headlight was only about 70 feet from that point. I will discuss the matter of parked cars later, in connection with diverging circumstances. If witness Parrish could see the dimmed light of plaintiff's car, by the same token she could have seen the bright headlight of the engine. We logically revert to the question: does this throw us back to the last-clear-chance doctrine? It does not, because without conflict the evidence shows the train of engine and fourteen cars could not stop under 200 feet, running at 12 miles per hour. The majority opinion directs our attention to Koob v. Schmolt and Menke v. Peterschmidt, both supra, which cases discuss the question of predicating negligence on two seconds of time. However, the majority emphasizes 1½ and 1⅔ seconds, so I have no hesitation in basing my analysis on a 4-second basis.

We have often held that when a traveler approaches a rail-

road crossing, diverting circumstances may occur or appear which are of sufficient importance to generate a jury question as to contributory negligence. Kinney v. Larsen and Markle v. Chicago, R. I. & P. Ry. Co., both supra, cited in majority opinion, with other similar cases. However, divergent circumstances must be genuine and real, and must be supported by testimony which justifies their use as a basis for submission to the jury. On the matter of significance of alleged divergent circumstances I disagree with the majority opinion. The majority opinion lists five alleged circumstances: (1) procession of cars ahead of plaintiff; (2) lights of a car coming from the northwest on the west side of highway 64; (3) neon lights on lumberyard sign; (4) parked cars in triangle area; (5) her "feeling" the railroad was obsolete. Plaintiff only mentioned two of these matters in her testimony: lights of the car over on the other road, and she had a "feeling" the track was obsolete. The fundamental meaning of divergence is that it takes your attention away from the main point of observation. In this case that was the railroad crossing and train. The three other alleged circumstances could not be divergent as to plaintiff, if she did not even notice them. However, I will consider the merits of each.

(1) The first alleged circumstance was that plaintiff was following at least five cars, which turned to the left into highway 64. Certainly a group of cars ahead of you moving quickly and properly out of your route to the left are not such a reasonable divergent circumstance as to cancel your obligation to look to the road ahead of you. This becomes especially true when you know you are approaching a railroad crossing, as plaintiff did.

(2) The second alleged divergent circumstance was the lights of the car coming from the northwest on highway 64. Plaintiff testifies this car was at the junction of the two highways when the five or more cars ahead of her were driving into the east lane of highway 64. Taking into consideration the topography of the area it seems impossible to accept the premise that this light could have affected plaintiff. A close study of the photograph shown in the majority opinion shows that

from the right-hand lane of Merle Hay Road, as it continues north as highway 141, to the left-hand lane of highway 64 would be at least 40 or 50 feet. This is not comparable to a car coming from the north on highway 141.and directly meeting plaintiff. She states there was no such car. Furthermore, long before plaintiff reached the apex of the. triangle the five cars ahead of her had driven into the right-hand lane in highway 64, and must have hidden any lights of approaching cars on said highway.

(3) Another divergent circumstance described in the majority opinion is the neon lights 30 or 35 feet in height above the ground at the lumberyard on the north side of the railroad track. The only time she refers to the lumberyard is under cross-examination where apparently she was questioned on the existence of a lumberyard at the railroad track and the necessity for the use of the track by reason thereof. She said she thought the lumberyard was served with trucks. The presence of these lights is established in the evidence through the photograph taken at night. The neon lights are 30 feet in height above the ground; not sufficiently fixed in the mind of plaintiff so that she would mention them in her testimony; not sufficiently close to the ground to neutralize the effect of the bright engine headlight.

(4) Another circumstance mentioned in the majority opinion is the matter of parked cars and some low advertising signs between the railroad track and the apex of the triangle. They were not close to the apex because that area was a gravel roadway. There could be no other obstruction because Tiny's Café is 85 feet west of the crossing on highway 141. The evidence as to the presence of cars is very unsatisfactory and very sketchy. A deputy sheriff described the area. A part of his statement is shown in the majority opinion. His full statement was: "Both Exhibit H and Exhibit I, to the best of my knowledge, are fairly accurate representations of the area as it appeared May 6, 1955." We do not have the benefit of copies of Exhibits H and I in the record. Prior to this statement he was describing the details of the area in general. It is significant he makes no specific reference to parked cars in the above statement. However, this is not too material, because undisputable

physical facts nullify diversion. The bright headlight of the engine was far above the tops of the parked cars and the low signs. This appears clearly in Exhibit 2, of which a copy is shown in the record. The fact also appears in the testimony of Mr. Shivers, the registered engineer, when he said: "There is a parking lot between Tiny's Food Shop and the railroad and the highway. If there were cars in that *they would not obstruct your vision of the top of a locomotive.* It would obstruct at ground level." (Emphasis ours.)

(5) The other diverting matter to which the majority opinion gives considerable attention is the fact that plaintiff testified on cross-examination she thought the crossing was obsolete. Her testimony was as follows: "As far as I was concerned, that was an obsolete track. I have never seen a train on it and I had been up there lots of times and the condition of it gives you that feeling that it is obsolete." In the first place is it fair to accept a "feeling" held by plaintiff, in the face of uncontradicted facts in the record to the contrary? While it is true this was not a busy track, yet the testimony shows one train ran north and came back each day for six days a week so there was a train on this crossing at least two times each weekday. We do not seem to have considered abandoned tracks, but the question has been under consideration in other states. Some jurisdictions have held it may be taken into consideration by the jury in connection with plaintiff's contributory negligence. However, it seems the weight of authority and certainly the more reasonable position is in accordance with Gallagher v. Montpelier & Wells River Railroad, 100 Vt. 299, 303, 137 A. 207, 209, 52 A. L. R. 744, 748. The court said:

"It is a matter of common knowledge that some railroads are not used so much as others, and that all roadbeds do not receive like attention; but a traveler has no right to assume that a railroad has been abandoned simply because he never saw a train running over it, or its roadbed is not kept in the most approved condition * * * so long as a railroad track is maintained across a public highway that, of itself, is notice to the world that trains are likely to be run thereon."

I am of the opinion that after having crossed this railroad crossing three times on the day on which the accident happened, and as she testified crossed it many times before, plaintiff is not entitled to have the question carried to the jury on this point.

Railway-crossing cases have been numerous in our judicial history. Generally speaking it is fundamental that when a traveler approaches a railroad crossing he has an obligation to be alert and watchful as to possible approach of trains. In a unanimous decision of this court, in an opinion written by Justice Faville, we analyzed the general railroad-crossing situation. The case is Lutz v. Davis, 195 Iowa 1049, 1052, 192 N.W. 15, 17, where we said: "The general rules of law regarding the duty of one about to cross a railway crossing, in order to be free from contributory negligence, are not intricate nor obscure. All courts agree that due care requires that a traveler, under such circumstances, must use his senses of sight and hearing, before attempting to cross a railway track, and in order to be free from contributory negligence, must look and listen for an approaching train. A failure so to do constitutes negligence on his part, as a matter of law. Now, if such plaintiff fails to prove that he did look and listen, then, applying the established rules of law, the court must hold that, as 'a matter of law,' the plaintiff has failed in an essential legal requisite of his proof, and cannot recover." This is still the law in Iowa.

In Darden v. Chicago & N. W. Ry. Co., 213 Iowa 583, 586, 239 N.W. 531, 533, we said: "The duty is placed on the driver of an automobile to look and listen for trains, and it was one of plaintiff's duties to look, at the place where, by looking, she could have seen * * *." (Citing five cases.)

We have considered many cases where obstructions appear at certain points. This causes the responsibility of the traveler, as to watchfulness and care, to be increased. On this question in Scherer v. Scandrett, 235 Iowa 229, 236, 237, 16 N.W.2d 329, 333, we stated: "In the Hinken case, supra, we said [97 Iowa 606, 66 N.W. 883]: 'If plaintiff had stopped and looked for the train, even after he had crossed the sidetrack, this sad accident would not have happened. * * * He knew, however, that his view of the track was obstructed for some distance just be-

fore reaching the sidetrack. This fact, alone, should have made him the more cautious, after he arrived at a place where he had an unobstructed view of the track.' " We also said in the same case: "In Reeves v. Dubuque & S. C. Ry. Co., 92 Iowa 32, 36, 60 N.W. 243, 245, we pointed out that if plaintiff had looked at the point where his view became unobstructed he would have seen the train and could have avoided the accident *'if he had been driving with that degree of care one should exercise when he knows he is near a railroad crossing.'* (Italics supplied.)"

I would affirm.

SMITH and HAYS, JJ., join in this dissent.