ILEEN DALY, administratrix of estate of Cletus Daly, deceased, appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY and D. L. HOLLEY, appellants.

No. 49542.

(Reported in 93 N.W.2d 68)

November 18, 1958.

O'Connor, Thomas, McDermott & Wright, of Dubuque, and Burnquist, Helsell, Burnquist & Kersten, of Fort Dodge, for appellant Illinois Central Railroad Company; and Czizek & Czizek, of Dubuque, for appellant D. L. Holley.

Kenline, Roedell, Hoffmann & Reynolds, of Dubuque, for appellee.

Larson, J.—This is the second appeal to this court of an action for wrongful death arising out of a railroad-crossing collision between a small truck and the Illinois Central passenger train "Land O'Corn" on January 7, 1952, in the Town of Farley, Iowa. See Daly, admx., v. Illinois Central Railroad Co., 248 Iowa 758, 80 N.W.2d 335.

On the retrial a general verdict was returned in favor of the

defendants. Thereafter, the plaintiff, Ileen Daly, administratrix of the estate of Cletus Daly, deceased, filed a motion for a new trial on the grounds: (1) that the court combined the issue of speed with the issue of inadequate warning and did not submit the question of excessive speed as a separate independent issue of negligence, and (2) claimed error in a court instruction relating to decedent's duty of care in approaching a railroad crossing. The motion was sustained on all grounds and the defendant railroad and its engineer have appealed from that ruling.

The facts and circumstances surrounding the collision are substantially as set out in our previous opinion. Daly, admx., v. Illinois Central Railroad Co., supra. The only material difference is that in the present matter there is record evidence that the bell on the locomotive was ringing at the time of the collision, and a dispute as to whether the warning given was in fact adequate.

On that morning the ground was covered with fresh, wet, slippery snow, and the temperature was below freezing. The involved Clark Street, 50 to 60 feet south of the railroad crossing, slopes downward to the tracks.

A lumber shed and a white picket fence six feet and two inches high obstructed the view westward for one proceeding toward the crossing. The train normally passed through Farley at 70 to 75 miles per hour on its way eastward to Chicago. There was evidence that the engineer commenced ringing the bell of the locomotive 5000 feet west of Clark Street, and sounded the air horn on the approach to Farley as well as several times inside the limits of the town, the last of which was 1400 to 1500 feet west of this intersection.

A Mr. Martin Gansemer witnessed the collision. He saw the decedent proceeding north toward the tracks while some 50 feet away, at about 10 miles per hour. He saw the decedent set the truck's brakes and slide his wheels when he was about 35 feet from the crossing. At the same time he heard the blast of the horn on the train. He sensed there might be an accident at the crossing and stepped out of the lumber shed to see the result. He did not recall hearing the bell. He expressed the opinion that had it not been for the icy highway condition the decedent could have stopped his truck before it came to the tracks.

Paragraphs 6(b) and 6(c) of plaintiff's petition alleged negligence on the part of defendants as follows:

"(b) In failing to give adequate warning of the approach of said train in view of the speed at which it was being operated, the location of the crossing, its dangerous and obscured nature, and all the facts and circumstances then existing;

"(c) In operating said train at a dangerous and excessive rate of speed under all the facts and circumstances then existing."

The trial court combined the two specifications in Instruction No. 7 as follows:

"The charges of negligence made by the plaintiff are as follows: * * *

"2. Defendants were negligent in operating the train at the time and place in question at a dangerous and excessive rate of speed under all the facts and circumstances then existing, without giving adequate warning of the approach of said train in view of the speed at which it was being operated and the location and nature of the crossing at which the accident occurred."

Proper and timely objections were made by plaintiff to this as well as to Instructions No. 8 and No. 9 which also dealt with the specifications of speed and warning as a single fault. The court told the jury in Instruction No. 9: "* * * if you find from a preponderance of the evidence that at the time and place in question, the defendants were operating said train at a dangerous and excessive speed under all the facts and circumstances then existing, *and* the defendants could have and in the exercise of ordinary care should have given additional signals of warning of the approach of said train to said crossing, and they failed to do so, you will find that the defendants were negligent." (Emphasis supplied.)

I. It is not unusual or improper for instructions to juries to paraphrase pleaded specifications of negligence. Clarke v. Hubbell, 249 Iowa 306, 313, 86 N.W.2d 905, 909, and cases cited. But here, as in the Clarke case, these instructions, as combined and paraphrased, require plaintiff to prove both her specifications 6(b) and (c), whereas proof of either (b) or (c)

would be quite sufficient proof of the defendants' negligence to sustain a verdict in her behalf. This was prejudicial error.

Speed is a fact or circumstance which may be taken into consideration in a determination of whether or not adequate warning was or was not given. The type of warning may be a circumstance to be taken into consideration in a determination of whether the speed was dangerous and excessive. But in each case such factors are but one of the circumstances, among others, which must be considered to determine the ultimate fact.

II. The rule exists that no amount of speed of a railroad train is in and of itself negligence except where regulated by statutes or ordinance. But there is also the rule that any speed may be negligence if, under the circumstances of the particular situation, a slower rate of advance is called for in the exercise of reasonable prudence. Jasper v. Chicago Great Western Ry. Co., 248 Iowa 1286, 1297, 84 N.W.2d 21, and citations; Finley v. Lowden, 224 Iowa 999, 1005, 277 N.W. 487; Artz v. The Chicago, R. I. & P. R. Co., 44 Iowa 284, 285; Wilson, admx., v. Chicago, M. & St. P. Ry. Co., 161 Iowa 191, 202, 142 N.W. 54; Annotation, 154 A. L. R. 238, 239.

From these cases there can be drawn but one conclusion. Excessive speed under some circumstances is a separate issue of negligence upon which recovery may be had, and it merits a separate submission to the jury. Also see Kinyon v. Chicago & N.W. Ry. Co., 118 Iowa 349, 92 N.W. 40, 96 Am. St. Rep. 382; Wright v. Chicago, R. I. & P. R. Co., 222 Iowa 583, 589, 268 N.W. 915.

Obviously there is a close relationship between speed at which a train may travel over a highway crossing and the precautions taken to warn persons using the highway or protect them from danger, but we cannot concede that in all circumstances a warning, even though clear and unmistakable, will absolve the railroad company of its duty to operate its trains at a reasonable speed through cities and towns.

While we have said speed alone in the country will not constitute negligence, the ringing of a bell or blowing of a horn or whistle in town or country will not relieve the railroad of all liability when the other circumstances show clearly that reasonable prudence demands a reduced speed. Thus, the duty

remains to operate trains with reasonable prudence no matter what warning is given. The common-law rule that care, to be reasonable, must be proportioned to the danger to be avoided, applies here as in other cases of alleged negligence. This view seems in accord with that expressed by most courts in the land. The most recent case involving this matter which we found is the Florida case of Loftin v. Deal, 154 Fla. 489, 18 So.2d 163, where a speed of 65 miles per hour was found negligent operation over a town crossing under existing static conditions, even though the crossing was guarded by operating signal lights.

Such variable circumstances as dense fog, violent thunderstorms, blizzards, or other physical conditions, may well dictate a reduced speed over such crossings.

The jury here may well have found a reduced speed was required under the circumstances disclosed. The evidence shows there were obstructions which blocked visibility. The streets were wet, snowy and slippery. One using Clark Street at that time could see only 142 feet westward when 50 feet south of the track. At 40 feet visibility was 490 feet, and at 30 feet 1750 feet westward. Evidence that the plaintiff's intestate was proceeding on the down slope toward the tracks slowly and cautiously was uncontroverted. His speed was not more than 10 miles per hour from 50 feet to 35 feet south of the tracks, where his brakes were set, and he slid onto the track in front of the train. We think there was a jury question under such circumstances as to whether the defendants, who were aware of this intersection and its slope, as well as the snowy, slippery condition of the street, did exercise reasonable prudence in driving the train over that crossing at 70 to 72 miles per hour on that morning even though its bell was ringing and its horn was blowing continuously. This being so, we are satisfied that the speed specification (c) should have been submitted separately.

■ III. On the other hand it may be, under the facts and circumstances disclosed, that the jury could have found that adequate warning was not given. One eyewitness testified he heard no bell ringing but did hear one blast of the horn at a time he figured was too late to avoid a collision. Upon hearing the horn, he went to see what would happen to the deceased.

Two seconds later the engine collided with the decedent's truck. The law clearly requires a warning or signal commensurate with the speed of the train, and, under the conditions shown here, whether or not ordinary care required a different or additional warning to those who may use the crossing is a question for the jury. Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 1069, 82 N.W.2d 781, and cases cited; Jasper v. Chicago Great Western Ry. Co., supra.

In Wiese v. Chicago G. W. R. Co., 182 Iowa 508, 512, 166 N.W. 66, 68, cited by defendants, we said: "No particular rate of speed can be denounced as negligence (Rutherford v. Iowa Cent. R. Co., 142 Iowa 744) ; but the rate of speed a train is moving obviously may have an important bearing in determining what precautions are essential to the safety of others, in ascertaining whether due care has been exercised by the company. [Citing cases.]"

Thus this specification of negligence also should have been submitted as a separate issue for the jury.

IV. Plaintiff contends the combination of these specifications required plaintiff to prove both of these issues to recover. We think it either doubled her burden or excused one defendant duty if she failed to establish the inadequacy of the warning. As we said in Kinyon v. Chicago & N.W. Ry. Co., supra, 118 Iowa 349, 92 N.W. 40, 96 Am. St. Rep. 382, the tenor and effect of the instructions given were to impress upon the jury the thought that, if adequate signals were given, the defendants had discharged their whole duty.

It may well be that the jury could find the speed was excessive because the warning was inadequate, but that is not the only reason such a finding could be made, and certainly a showing of inadequate warning would not necessarily involve excessive speed. A slow-moving switch engine may cause injury or damage at an unguarded crossing, and speed may play no part in the accident. Each involves a separate duty which, when breached, may give rise to a cause of action in tort.

While it is true we have made no specific pronouncement on a combination of these issues in an instruction, the matter was touched on in the case of Bruggeman v. Illinois Central R. Co.,

147 Iowa 187, 200, 201, 123 N.W. 1007, Ann. Cas. 1912B 876. We criticized the lower court's Instruction No. 5, which said: " 'In this case the speed at which the train in question was run at the crossing or approaching thereto—whether great or little—would not of itself constitute negligence, but you have the right to consider that speed in deciding whether or not reasonable and adequate signals were given, together with all the proven facts bearing on that issue.' " We said: "This evidently presented but one side of the question. Indeed, if the jury followed it, they were obliged to find, under the facts of the case as disclosed by the testimony, that the speed of the train could not be considered as showing negligence on the part of the defendant, save as it had bearing only upon the question of defendant's neglect in giving reasonable and adequate signals." It was emphasized there that speed under the circumstances, which might or might not include failure to sound an adequate warning, could be found to disclose a want of reasonable care and constitute negligence as a matter of fact. We reaffirm that position now.

It is our conclusion that each of the specifications 6(b) and 6(c), under the evidence submitted, could have stood alone, and that it was improper to combine them in one instruction. Proof of one was not necessarily proof of the other. As stated in Clarke v. Hubbell, supra, the effect of Instructions Nos. 7, 8 and 9, in this respect, was to make virtually impossible a finding that the defendants were negligent, for proof that the warning was adequate under these instructions excused the issue of excessive speed. Although it is true we have apparently approved instructions in some former cases which indicate there was, under some circumstances, no obligation to check the speed of a train if reasonable warning was given, Pratt v. Chicago, R. I. & P. Ry. Co., 107 Iowa 287, 294, 77 N.W. 1064, yet, if the circumstances are such as to require a speed reduction in the exercise of reasonable prudence, that duty cannot be excused. Although we regret the necessity of sending this case back for a third trial, the order granting a new trial must be affirmed.

V. The rule is well settled that if any ground of several upon which a new trial is granted is good, then the lower court's

118

decision must stand. We, therefore, do not consider plaintiff's second complaint as to Instruction No. 12. As the case must again be tried, no doubt the questioned portion of this instruction will be avoided.—Affirmed.

All JUSTICES concur.