**ILLINOIS CENTRAL RAILROAD COMPANY, Appellant,**

v.

**Admiral Dewey STUFFLEBEAN, Jr., Appellee.**

No. 16200.

United States Court of Appeals Eighth Circuit.

Oct. 14, 1959.

Don N. Kersten, Fort Dodge, Iowa (Burnquist, Helsell, Burnquist & Kersten, Fort Dodge, Iowa, Joseph H. Wright, and Herbert J. Deany, Chicago, Ill., were with him on the brief), for appellant.

Herbert R. Bennett and John H. Mitchell, Fort Dodge, Iowa (McCarville & Bennett, Fort Dodge, Iowa, was with them on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant appeals from final judgment entered for plaintiff for damages resulting from a collision between a car owned and operated by plaintiff and defendant's switch train. Plaintiff's action is based upon negligence. The case was tried to a jury.

Defendant at the close of plaintiff's evidence and again at the close of all of the evidence moved for a directed verdict on the ground that there was no evidence to support a finding of negligence on the part of the defendant or freedom from contributory negligence on the part of the plaintiff. Ruling upon the motion was reserved by the court as authorized by Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. After adverse verdict the defendant renewed its motion for directed verdict and made timely motion for judgment n. o. v. Said motions were overruled and judgment was entered for plaintiff upon the jury verdict.

All parties agree that the trial court's statement of the facts surrounding the accident, contained in his unreported memorandum opinion, is substantially correct.

The collision between plaintiff's car and defendant's switch train occurred at a railroad crossing about two miles east and two miles south of Fort Dodge, Iowa, at 6:30 P.M. on January 10, 1957. Plaintiff was driving his automobile south on a heavily traveled blacktop road. This road is intersected by two of defendant's tracks. The north track is a passing track, the easterly switch for which is located about 1,500 feet east of the crossing. The south track is the main track. About 40 feet west of the crossing there is a switch leading from the main track to a storage track. A number of gypsum mills are located in the immediate vicinity of this railroad crossing. The mills require a large number of boxcars for transporting their products. Extensive switching operations are carried on over the crossing from 3:00 P.M. to 7:00 P.M. daily for the purpose of assembling the boxcars into trains. The tracks are protected by the usual cross-buck warnings. The trial court thus describes the switch train movement immediately preceding the collision:

"On the evening of January 10th, 1957, at around 6:30 o'clock P.M., a switch crew of the defendant was engaged in switching operations over and on the crossing. The switch engine was then to the east of the crossing with a string of boxcars in front of it. The front end of the engine was facing west. Across the crossing to the west there was another string of boxcars. One member of the switch crew was stationed at the east end of such string. Another member of the switch crew was stationed at the storage track switch. The switch crew desired to place the boxcar which was at the west end of the string of cars east of the crossing upon the storage track. Another member of the switch crew was at or near the crossing in connection with the movement. It was dark at the time. All three of the members of the switch crew referred to carried electric lanterns which were lit at the time. At the time the headlight of the locomotive was turned off. Its rear headlight facing toward the east was on. The locomotive headlight was turned off because the locomotive was coupled to a string of boxcars in front of it, and if the headlight was turned on it would shine directly against the boxcar in front of it. If the headlight were on under such conditions it would tend to dazzle those in charge of the locomotive and make it difficult for them to see the lantern signals of the switch crew to the west. At and around the time the switch crew started the movement which had for its objective the placing of the lead car of the string of cars east of the crossing on the storage track, a train of the defendant approached from the east on the main line and

was entering the passing track at the east passing track switch. The headlight on the locomotive of that train was turned on and shone to the west. At or about this time the engineer of the switch train engine in response to a signal from the switchman at the crossing proceeded to push the string of cars to the west. As the lead car was near or on the crossing the switchman uncoupled it from the string. At or about the same time he signalled the engineer to bring the rest of the string to a stop. As the engineer slowed up the string the lead car separated itself from the string and proceeded down the main track. It had been provided with sufficient momentum so that it would roll down the main track and then through the open storage track switch and on to the storage track. The whistle on the switch engine was not sounded and the bell on it was not rung in connection with the movement. After the lead car was uncoupled and while the string of cars to which it had been attached was being slowed down there was a gap between it and the next car in the string. Neither the lead car nor the other cars in the string carried lights or reflectors. While the second car in the string was still in movement on the crossing, a collision occurred between it and a motor vehicle owned and operated by the plaintiff."

The plaintiff passed over the accident crossing frequently, was familiar with it, and also knew of the extensive switching operations. There were no physical obstructions to plaintiff's view of the crossing. The night was dark. Plaintiff's headlights were operating efficiently. Plaintiff testified that when he was 500 feet from the crossing he was traveling 30 miles per hour. He then saw a train with a bright headlight slowly approaching from the east, about a quarter of a mile away. This train used the passing track and was not the train collided with. Plaintiff looked in both directions from time to time, rolled down his car window, shifted his car to second gear, and slowed down to about 15 miles per hour when about 100 feet from the crossing. He again looked in both directions. Plaintiff testified further:

"As I approached the crossing I saw a boxcar go across, one single boxcar. I saw no more. There was either a light walking beside it, a lantern light, or riding it; which, I can't say. * * * The crossing was cleared.

"Q. What cleared the crossing? A. This one boxcar I saw.

"Q. You know that it cleared the crossing? A. I know that it cleared the crossing.

"Q. And, what happened to the light? A. The light was off to the west of me at approximately, in the vicinity of the switch.

* * * * * *

"Q. And, did you then look straight ahead of the crossing after the boxcar crossed? A. Yes, sir.

"Q. Did you observe any cars or train, or anything on the crossing? A. No, sir."

Plaintiff saw nothing to the east except the oncoming regular train on the passing track. There was no signalman at the crossing. On other occasions when the crossing was in use for switching a man was stationed at the crossing to stop traffic. Just west of the crossing plaintiff saw a lantern light swinging back and forth which he thought was a come ahead signal. As plaintiff reached the crossing the lead car of the switch train suddenly loomed up in front of him. He tried to pull to the side but hit the freight car.

Defendant offered testimony to the effect that plaintiff did not slow down and that appropriate lantern signals were given plaintiff to stop, as well as other testimony in support of its theory that the plaintiff was guilty of contributory negligence. It is undisputed that there was a gap between the lead car bunted

across the crossing and the balance of the switch train, but there is sharp dispute as to the size of the gap.

Defendant in its brief urges that it is entitled to a reversal for the following reasons:

1. Plaintiff's claim was inconsistent with and contrary to the overwhelming weight of the evidence, and there is no substantial evidence to support the verdict for the plaintiff.

2. Defendant is entitled to a directed verdict because plaintiff failed to prove his freedom from contributory negligence.

3. The trial court erred in giving Instruction No. 8.

The issues will be discussed in the order urged.

■■■ Ordinarily, in a jury trial it is for the jury to determine the credibility of witnesses and the weight to be given the testimony. In passing on the sufficiency of the evidence to support a verdict, the evidence must be viewed in the light most favorable to the prevailing party. An appellate court cannot try a case de novo and substitute its judgment for that of the jury. Whether negligence or contributory negligence exists in a particular case ordinarily presents a fact question for the jury. The Supreme Court of Iowa has frequently stated that precedents are of little value in railroad crossing cases because facts control and they differ. Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781, 787, and cases cited. See also Mast v. Illinois Central R. Co., 8 Cir., 176 F.2d 157, 161. In the Strom case the court states (at page 787 of 82 N.W.2d):

> "Our decisions contain numerous pronouncements like this from Leinen v. Boettger, 241 Iowa 910, 926, 44 N.W.2d 73, 83: ' * * * the issue of freedom from contributory negligence * * * is usually one of fact and not of law, and is peculiarly and ordinarily for the determination of the jury, and that it is only in the rare and exceptional

case, and where the lack of reasonable care is so manifest, flagrant, palpable, that reasonable minds may fairly reach no other conclusion, that the question is one of law for the court. It is ordinary care, and not the highest degree of care, that is required. * * * ' "

■■■ The defendant in it motions raises the issue that the plaintiff had failed to prove that the defendant was negligent in any of the respects charged. It does not argue this point in its brief. Our examination of the record satisfies us that there is substantial evidence to support plaintiff's contention that the accident was proximately caused by defendant's negligence.

Defendant also urged in its motions that plaintiff was guilty of contributory negligence as a matter of law, and that the plaintiff had failed to establish his freedom from contributory negligence. This is the issue most vigorously argued as a basis for reversal.

■■■ In Iowa, in a negligence action, the plaintiff has the burden of pleading and proving that he was free from negligence contributing in any way or in any degree directly to the accident causing the injury. Mast v. Illinois Central R. Co., D.C.N.D.Iowa, 79 F.Supp. 149, 159, affirmed 8 Cir., 176 F.2d 157; Plumb v. Minneapolis and St. L. Ry. Co., 249 Iowa 1187, 91 N.W.2d 380, 384.

■■■ The Iowa courts have consistently held that a railroad crossing is a place of potential danger, and that a person about to go over a railroad crossing must exercise reasonable care for his own safety. He must look and listen for trains, and be prepared to stop short of the crossing to avoid a collision. In a number of cases where the view of the crossing was not obstructed and there were no diverting circumstances the Iowa court has held that the plaintiff was guilty of negligence as a matter of law. In a number of cases because of death or amnesia of the automobile driver the plaintiff has been unable to offer any proof of the care exercised by

such driver. The plaintiff, except in situations where he is entitled to the presumption of the Iowa no eyewitness rule, in order to prevail must offer some evidence which would support a finding that he was exercising reasonable care for his own safety. Chicago, R. I. & P. R. Co. v. Lovejoy, 8 Cir., 206 F.2d 77, 82, 83; Rickabaugh v. Wabash R. Co., 242 Iowa 746, 44 N.W.2d 659. In Mast v. Illinois Central R. Co., supra, this court stated (at page 161 of 176 F.2d):

> "In one of the last Iowa railroad crossing cases, Kinney v. Larsen, [239] Iowa [494], 31 N.W.2d 635, 638, it is said that in general the Supreme Court of Iowa has held that, where the view of a railroad track at a grade crossing, is so obstructed as to render it impossible or difficult to learn of the approach of the train, or where there is evidence of 'diverting circumstances' tending to throw a person off his guard, the question of the contributory negligence of the person injured is for the jury. But this is a far cry from holding that the question is always for the jury. * * *"

The latest Iowa cases adhere to the rule just stated. Strom v. Des Moines & Central Ry. Co., supra, 82 N.W.2d at page 787; Plumb v. Minneapolis and St. Louis R. Co., supra, 91 N.W.2d at page 385.

■ In testing the ruling of a trial court on questions of local law, we have frequently said that the considered opinion of the trial court should be accorded great weight, and that we will not adopt a view contrary to that of the trial court unless convinced of error. Mast v. Illinois Central R. Co., supra, 176 F.2d at page 163; Chicago, R. I. & P. R. Co. v. Lovejoy, supra, 206 F.2d at page 82. We will not attempt to "outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State." Iowa Electric Light & Power Co. v. City of Lyons, Nebraska, 8 Cir., 265 F.2d 273, 277, and cases cited.

These rules are peculiarly applicable here. The trial court's opinions in this case and the Mast case show that he has on various occasions made careful and thorough study of the Iowa law applicable to railroad crossing accidents.

■ The plaintiff in the present case knew that he was approaching a dangerous railroad crossing at a time when switching operations were normally in progress. Unlike the situation in many of the cases, where plaintiff was held guilty of contributory negligence as a matter of law, the plaintiff has testified in detail as to his observations and actions up to the instant of the collision. As heretofore pointed out, the Iowa court has in many of its opinions, some of which are very recent, stated that where the view of the railroad crossing is obstructed or there are diverting circumstances the issue of contributory negligence is usually for the jury. Here no obstruction of view was claimed. It is, however, seriously urged that diverting circumstances existed.

The trial court states that the contributory negligence issue is close, difficult, and troublesome. He then finds that a fact issue is presented on the existence of diverting circumstances, stating:

> "Counsel for the plaintiff asserts that the record in this case does disclose deceptive, diverting, special or peculiar circumstances. Those claimed circumstances are as follows: the approach of the train from the east together with the claimed dazzling effect of its headlight as it shone down the passing track towards and across the crossing; the use of a highway crossing on a much travelled highway in the open country for extensive switching operations and the carrying on of such operations during darkness and in connection with which the switch engine headlight would be turned off at times and no whistle sounded or bell rung; the shifting of dark and unlighted boxcars across the crossing in dark; a claimed deceiving gap between the

lead car and the car next to it as the lead car was being bunted across the crossing; the claimed inadequacy and deceptiveness of the lantern signals given.

"It would seem incredible as a matter of law that W. L. Beshey did in fact intend to signal the plaintiff to come across the crossing. However, it would not be incredible as a matter of law that the signals given by him were of such a nature as being capable of being misunderstood by an approaching motorist. In order for him to give signals that could be seen by the engineer it was necessary for him to face towards the engineer. A stop signal to the engineer consisted of moving the lantern back and forth crossways. When so given the lantern would be moving to and from a motorist approaching on the highway from the north. It is the claim of counsel for the plaintiff that if W. L. Beshey did not signal the plaintiff to proceed that his alternating of signals to the engineer and to the plaintiff justifiably gave rise to misunderstanding on the part of the latter.

\*　\*　\*　\*　\*　\*

"\* \* \* The Court is of the view that under the peculiar and special conditions and circumstances existing at the crossing immediately preceding the collision a jury question was engendered as to the issue of contributory negligence."

The Iowa court has laid down no precise formula for determining what constitutes diverting circumstances. Rather, it has approached this issue on a case to case basis, in the light of the peculiar facts presented in each case, and has said that precedents are of little value as facts differ. The diverting circumstances found to exist in the Strom case, supra, are stated by the court (at page 788 of 82 N.W.2d):

"\* \* \* There were also diverting circumstances which reasonably

tended to throw her off her guard—particularly the other cars making left turns just ahead of her, the blinding lights of the automobile approaching from the northwest, and the brilliantly lighted lumber sign with its revolving, flashing light, designed to attract attention. \*　\*　\*"

■ We believe that the Strom case affords some basis for the trial court's conclusion that there is evidence to support a finding of diverting circumstances in the present case. We cannot say that the trial court misconstrued or misapplied the Iowa law in holding that plaintiff was not guilty of contributory negligence as a matter of law.

■ Lastly plaintiff urges that the court erred in giving Instruction No. 8. In this instruction the court told the jury in substance that if they found that the switching operations at the crossing were unusually hazardous, and that an ordinarily careful and prudent person under the same or similar conditions and circumstances would have provided flashing signals or other mechanical warning device, then the defendant would be guilty of negligence in failing to so provide; or, if the defendant's employees did anything or omitted to do anything in the matter of giving a warning of the switching operations that would not have been done or omitted by an ordinarily careful and prudent person under the same or similar conditions and circumstances, the defendant would be guilty of negligence in that connection.

Support is found in the Iowa cases for the instruction given. Glanville v. Chicago, R. I. & P. R. Co., 190 Iowa 174, 180 N.W. 152, 155; Strom v. Des Moines & Central R. Co., supra, 82 N.W.2d at page 787. Defendant has not established that the instruction excepted to does not properly state applicable Iowa law. There is substantial evidence from which the jury could find the crossing to be unusually hazardous.

The judgment is affirmed.