CHICAGO, BURLINGTON AND QUINCY
RAILROAD COMPANY, Appellant,

v.

Alfred KING, Appellee.

No. 17607.

United States Court of Appeals
Eighth Circuit.

Oct. 30, 1964.

Rehearing Denied Nov. 30, 1964.

H. C. Walsh, of Pryor, Riley, Jones & Walsh, Burlington, Iowa, and K. A. Aspelmeier, of Pryor, Riley, Jones & Walsh, Burlington, Iowa, made argument for appellant and filed brief with J. C. Pryor and J. C. Riley, Burlington, Iowa, of the same firm.

Robert E. Dreher, and Kenneth H. Haynie, Des Moines, Iowa, made argument for appellee and filed brief.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and DAVIES, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the defendant Chicago, Burlington and Quincy Railroad Company from a judgment for $118,593.10 entered against it upon a jury verdict in favor of plaintiff Alfred King in an action for damages predicated upon negligence arising out of a collision between a car operated by plaintiff and defendant's train at a country railroad crossing southeast of Harvey, Iowa, about 1:15 p. m. on September 30, 1960. The collision occurred on a north and south country gravel road leading from Highway 92 to the town of Harvey at a point where it crossed the east and west track of the railroad. Plaintiff was driving south. The train was headed west. The road was being used as a detour for traffic normally using Highway 310 which was under repair. Plaintiff was not familiar with the road. There were three conventional railroad warning signs along the road which plaintiff traveled, a state highway warning sign and the crossbuck sign for the Wabash tracks which were some distance north of defendant's track, and the crossbuck sign for defendant's track. There was no train speed limit in effect at the accident location. The company's own rules imposed a 35 miles per hour speed limit. The engineer testified the speed was 30 to 35 miles per hour. The engineer further testified that he saw plaintiff's car when the train was about 180 feet from the crossing, and he immediately took all emergency steps to stop the train but that it was impossible to do so in time to avoid the collision.

Plaintiff passed three men in a parked truck about one-fourth mile north of the crossing. They estimated plaintiff's speed at the time at 40 to 60 miles per hour. They heard the train whistle as it passed the crossing but did not see the collision.

A highway patrolman testified that skid marks left by plaintiff's car as it approached the track were 44 feet in length and that the ordinary reaction time for braking after seeing an object is three-fourths of a second. At 50 miles per hour, 55 feet would be traveled in three-fourths second and that the combined reaction time and skid marks would indicate that plaintiff saw the train when 99 feet from the track. The patrolman further testified, "As you are coming south, to your left is high weeds, uncut brush, several trees of various heights. The visibility angle starts approximately 50 feet north of the tracks."

The evidence with respect to the obstruction of plaintiff's view of the track in the direction from which the train was approaching is in dispute. There is substantial evidence in the form of testimony of disinterested witnesses and photographs in evidence that such view

was badly obstructed. Other facts will be set out in the course of the opinion.

Jurisdiction, based upon diversity of citizenship, is established.

The complaint asserts that defendant was guilty of negligence which proximately caused plaintiff's injuries. Defendant admitted jurisdiction and the fact of collision but denied all allegations of negligence and affirmatively alleged that plaintiff's injuries were caused by his own negligence. Plaintiff suffered severe injuries as a result of the collision, including permanent brain injuries. The amount of damages is not here attacked.

The court submitted to the jury the issue of defendant's negligence, proximate cause, plaintiff's contributory negligence and the issue of damages in event the jury found plaintiff entitled to recover. The pleaded specifications of negligence submitted to the jury were:

"1. Failing to signal the approach of the train by sounding a whistle and continuously ringing a bell in violation of § 478.19 of the Iowa Code [I.C.A.].

"2. Failing to operate the train at a speed which was reasonable and in accordance with due care under the circumstances then and there existing just prior to and at the time of the accident.

"3. Failing to maintain proper warning devices at the crossing in question."

Defendant by motion for directed verdict made at the close of the plaintiff's evidence and renewed at the close of all the evidence challenged the sufficiency of the evidence to support each allegation of negligence submitted and also urged that plaintiff had not met the burden imposed upon him to establish freedom from contributory negligence. Defendant also incorporated its attack upon the sufficiency of the evidence to support a verdict by exceptions to instructions and by motion for judgment n. o. v.

Defendant as a basis for reversal relies upon the following points:

I. The court erred in submitting the issue of whether plaintiff was entitled to the benefit of the Iowa "no eyewitness rule."

II. Contributory negligence on the part of plaintiff has been established as a matter of law and hence the court erred in overruling defendant's motions for directed verdict and judgment n. o. v.

III. The court erred in submitting each of the three specifications of negligence heretofore set out to the jury for the reason that there is no substantial evidence to support any of the specifications.

IV. The court erred in submitting the sudden emergency instruction.

## I.

By Instruction 16, the court submitted to the jury the issue of whether there was an eyewitness to the accident under the Iowa no eyewitness rule, and then properly instructed the jury as to the applicability of such rule in event the jury found there was no eyewitness. Defendant excepted to such instruction on the ground "that there was an eyewitness to the accident in question, and there is no justification for giving the instruction nor for the application of the no eyewitness rule." On brief, defendant asserts Instruction 16 should not have been given the jury for the following reasons:

"(1) there is no precedent in Iowa law for the application of this rule in a railroad crossing accident case; (2) the physical facts of this case clearly indicate that the plaintiff failed to exercise due care at and prior to the railroad crossing in question; (3) Engineer Jesse Worth was an eye witness in this case and, therefore, the rule has no application."

Defendant's first contention is without merit. The no eyewitness rule is well-established in Iowa jurisprudence and has been extensively discussed in many cases, among them, Mast v. Illinois Central R. R., D.C.Iowa, 79 F.Supp. 149, 164–173; Chicago, R. I. & P. R. R. v. Lovejoy,

8 Cir., 206 F.2d 77, 81; Hoffman v. Monroe Welding Supply Co., 253 Iowa 591, 113 N.W.2d 237, 240. See Snell, "Eyeing the Iowa No Eyewitness Rule", 43 Iowa L.Rev. 57: "The 'No Eyewitness' Rule in Iowa", 6 Drake L.Rev. 101.

In Hoffman, an automobile collision case, the court states:

"The rule is well settled in this state that in the absence of eyewitnesses or of any obtainable evidence as to what the deceased did or failed to do, by way of reasonable precaution for his own safety, at or immediately before his injury, there arises an inference that he, prompted by his natural instinct, was in the exercise of due care for his own safety. * * * The purpose of the rule we have recognized is to avoid any injustice due to the severe burden on plaintiff to plead and prove freedom from contributory negligence in order to recover in this type of action when there are no survivors or witnesses who can tell what the plaintiff's decedent was doing immediately prior to the accident. In cases such as the one before us, if the driver suffered retrograde amnesia or could remember nothing about the accident and no other person saw plaintiff's decedent, it would be impossible to carry that burden unless some inference such as the no-eyewitness rule were indulged. We have made it quite clear, while such inference of due care is not evidence, it may be considered by the jury in its determination of the fact question as to whether the deceased was contributorily negligent. Plaintiff was entitled to have the jury so instructed here. * * *" 113 N.W.2d 237, 240–241.

We find nothing in the Iowa cases to support the contention that the no eyewitness rule is inapplicable in railroad crossing cases to injured operators of the accident automobile. Such cases clearly fall within the spirit and the scope of the rule under appropriate circumstances.

■■■ With respect to the second contention, it is true that the no eyewitness rule only raises an inference of due care. In particular situations, evidence of physical facts may be sufficiently strong not only to overcome the inference but to entitle the defendant to a directed verdict. For reasons hereinafter set out in our discussion of the directed verdict issue, we hold that the physical facts in this case do not compel a directed verdict for the defendant.

■■ Was there an eyewitness to the accident? It is not seriously questioned that plaintiff suffered severe brain injuries which wiped out any memory of events leading up to the accident. Hence, plaintiff was not an eyewitness. See Hoffman v. Monroe Welding, supra. The only possible eyewitness to the accident was engineer Worth. The parties stipulated in effect that none of the other members of the train crew were in a position to see the accident. Havener, Chilcote and Fridlington, the three men plaintiff passed about one-fourth mile north of the track, testified that they did not see the accident. Defendant's argument is centered upon its contention that Worth was an eyewitness. Worth at the trial testified that he saw the King automobile about 180 feet north of the crossing when the train was about 180 feet east of the crossing. He said he could not tell how fast the car was going but that the speed was excessive. He testified, "I couldn't tell whether it was speeding up or slowing down or whether it braked at any time. I had no view of the driver." Such testimony fails to establish as a matter of law that Worth was an eyewitness during the material moments preceding the collision.

While as set out in Mast (p. 168 of 79 F.Supp.) the earlier cases indicated that the witness' status as an eyewitness should be determined by the court and not left to the jury, the recent case of Coleman v. Brower Const. Co., 254 Iowa 724, 119 N.W.2d 256, 268, clearly approves the submission of the applicability of the no eyewitness rule to the jury under appropriate circumstances.

Moreover, Worth as a witness admitted that his testimony varied substantially from testimony he had previously given by a deposition wherein he in substance stated that he had first seen the King automobile when he was at the mile post (140 feet east of the crossing), that prior to that point his view was cut off by trees and brush, and that plaintiff's automobile at that time was 15 to 20 feet north of the crossing. Like the trial court, we believe a serious question of credibility of Worth as a witness is raised. Credibility issues are for resolution by the jury. Upon the record in this case, the issue of the availability of the no eyewitness rule to the plaintiff was properly submitted to the jury.

## II.

■■ It is established beyond doubt that in Iowa the burden is upon the plaintiff to prove freedom from contributory negligence. If plaintiff is guilty of negligence which contributes in any way or in any degree directly to his injury, recovery is barred. The issue of freedom from contributory negligence is ordinarily a fact issue for the jury but if there is a failure of proof upon such issue, defendant is entitled to a directed verdict. Chicago, Rock Island & Pac. R. R. v. Breckenridge, 8 Cir., 333 F.2d 990, 991; Illinois Central R.R. v. Stufflebean, 8 Cir., 270 F.2d 801.

Our holding that a fact issue is presented on the availability of the no eyewitness rule has an important bearing upon defendant's contention that plaintiff is guilty of contributory negligence as a matter of law. We have heretofore set out the purposes and scope of the Iowa no eyewitness rule as stated in Hoffman. In Mast v. Illinois Central R. R., D.C.Iowa, 79 F.Supp. 149, aff'd 8 Cir., 176 F.2d 157, Judge Graven, after considering and citing numerous supporting cases, states:

"In general, the inference has sufficient probative force in itself to take a plaintiff's case to the jury on the question of freedom from contributory negligence. * * *

"In certain cases, however, the physical facts may be such as to establish that the injured party was guilty of contributory negligence as a matter of law, and, opposed to such a state of circumstances, the inference is insufficient to create a question of fact as to the issue of contributory negligence. * * *

"Except in cases where the physical facts show unquestionable contributory negligence, the inference is not generally so overcome by circumstantial evidence as to make the question of freedom from contributory negligence a matter of law for the court." 79 F.Supp. 149, 166.

In Larson v. Johnson, 253 Iowa 1232, 115 N.W.2d 849, 852, the court quotes with approval from Korab v. Chicago, R. I. & P. Ry., 149 Iowa 711, 128 N.W. 529, 531, 41 L.R.A.,N.S., 32 as follows:

" 'The presumption is something more than a mere shadowy generality. In the absence of direct evidence, the presumption supplies its place, and if the issue of contributory negligence is the only obstacle to recovery it is sufficient to support a verdict for the plaintiff. True, this presumption may be overcome by a showing of other circumstances from which the jury may fairly conclude that deceased was not in fact exercising due care; but in the nature of things this counter showing can rarely be so overwhelming and conclusive as to make the question whether the presumption has been fairly overcome a matter of law.' "

In Strom v. Des Moines & Central Iowa Ry., 248 Iowa 1052, 82 N.W.2d 781, which involves a suit by a driver for injuries sustained in a railroad crossing accident, the court in reversing a directed verdict for the railroad emphasizes that it is only in rare and exceptional cases that the lack of reasonable care is so manifest as to warrant a directed verdict. The court states:

"Kinney v. Larsen, supra [Kinney v. Larsen, 239 Iowa 494, 31 N.W.

2d 635], states, at page 500 of 239 Iowa, at page 638 of 31 N.W.2d, that in general we have held, where the traveler's view of the crossing is obstructed 'so as to render it impossible or difficult to learn of the approach of a train' or there are diverting circumstances which tend to throw the traveler off his guard, the question of freedom from contributory negligence is for the jury. But where the view of the crossing is unobstructed and where there are no diverting circumstances a plaintiff, especially one who is familiar with the crossing, is ordinarily denied recovery on the ground of contributory negligence." 82 N.W.2d 781, 787–788.

To like effect, see Illinois Central R.R. v. Stufflebean, supra.

 In our present case, there is substantial evidence in the form of testimony of disinterested witnesses and photographic exhibits from which a jury could find that the plaintiff's view of the track and the oncoming train was obstructed by trees, weeds and brush. Although a motorist approaching a railroad crossing must exercise care and look in both directions for trains, he is not compelled to look in any direction first and the frequency with which he should change directions depends upon the circumstances and is usually a jury question. Coonley v. Lowden, 234 Iowa 731, 12 N.W.2d 870, 874–875. The foregoing rule is quoted with approval in Culbertson v. Anderson, 251 Iowa 265, 100 N.W.2d 633, 636.

 Defendant has failed to demonstrate that the trial court misinterpreted or misapplied the applicable Iowa law in determining that contributory negligence of the plaintiff has not been established as a matter of law.

### III.

Defendant urges that the court committed error in submitting each of three specifications of negligence, heretofore set out. The objection in each instance is based upon the sufficiency of the evidence to support the specification of negligence, not to any alleged erroneous statement contained in the instructions.

 The first specification is based upon the alleged failure of the engineer to comply with § 478.19 I.C.A. which requires the whistle shall be twice sharply sounded at least sixty rods before a road crossing is reached and that the bell be rung continuously thereafter until the crossing is passed. Members of the train crew testified that the whistle was sounded and the bell rung in full compliance with the statute. Such is positive evidence of compliance. Defendant urges that evidence offered by the plaintiff to the contrary is negative evidence insufficient to create a conflict for jury determination. The issue here presented was considered by the Iowa Court in Strom v. Des Moines & Central Iowa Ry., 82 N.W.2d 781, 790. With respect to the applicable law, the court states:

"This subject is exhaustively considered in the annotation to Kindt v. Reading Co., 352 Pa. 419, 43 A.2d 145, 162 A.L.R. 1, commencing page 9. At pages 103–107 numerous cases, including several of our own, are cited for this proposition and a related one: 'Statements on the witness stand (in some instances corroborated by similar testimony), by persons who were in vehicles as a train approached the crossing and who were shown to have been listening or otherwise attentive, that they did not hear signals frequently have been held to have sufficient probative force to sustain a finding that signals were not given.'

\*　　\*　　\*　　\*　　\*　　\*

" 'If the position and attention of such witnesses were such that they probably would have heard the signals had they been given, their testimony, even that of a single witness, to the effect that the signals were not given, may be sufficient to establish that fact even where such testimony is opposed by positive testimony that the signals were given.' "

**516**

In Chicago, R. I. & P. R.R. v. Lovejoy, 8 Cir., 206 F.2d 77, this court applied Iowa law and found that a farmer, sitting in his living room about 800 feet from the spot where a car-train crossing accident occurred, was in such a position and attitude as would reasonably give rise to a probability that the whistle, if sounded, would have been heard by the witness. We held such testimony was sufficient to raise a fact issue on whether the whistle was sounded as required by statute.

In our present case, Fridlington and Chilcote were passengers in a truck parked a quarter of a mile north of the track at the time the plaintiff's car passed. Such truck had been started on its way toward the crossing before the accident. The motor was quiet; the radio was not turned on. A witness testified that the windows were likely open because the weather was hot. Fridlington testified:

"Q. Did you hear a train whistle or bell at any time? A. As it crossed the crossing there was the horn.

"Q. The horn? And had you heard it before the crossing? A. No.

"Q. What type of sound was being made as it crossed the crossing? What kind of a blast on the horn? A. Oh, it just sounded like a horn.

"Q. Was it a long blast, a short one, or what? A. It blew all the time the train was going across the crossing. From the time the engine went across, until the caboose." Chilcote's testimony is:

"Q. Now when you were sitting in the pickup truck did you hear a whistle or bell from the locomotive? A. No, I didn't; until after they was about across the crossing. Then I heard a whistle going.

"Q. Until then, you heard no whistle or bell? A. No.

"Q. Up in Brubaker's house, are you within earshot? A. Oh, yes. Yah; yah."

While the foregoing witnesses did not see the collision, they saw the train go over the crossing. There is also testimony that they anticipated a collision might take place. There is an attack on the credibility of the witnesses but such issue was for resolution by the jury. We conclude that there is substantial evidence from which the jury could find that Fridlington and Chilcote were attentive and were within hearing distance of the sound of the bell and whistle. They did hear the whistle sounded as the train went over the crossing. There is sufficient evidence to support a finding that such witnesses would have heard the required signals if they had been given.

The court committed no error in giving the speed specification. The court properly instructed the jury that no statutory speed limit had been violated but that speed may constitute negligence if it was greater than reasonable and proper under all the circumstances disclosed by the evidence. "[S]peed may be negligence if, under the circumstances of the particular situation, a slower rate of advance is called for in the exercise of reasonable prudence." Daly v. Illinois Central R.R., 250 Iowa 110, 93 N.W.2d 68, 71, and cases there cited.

The court's instruction submitted the issue of failure to maintain proper warning devices is adequately supported by Iowa law. Wickman v. Illinois Central R.R., 253 Iowa 912, 114 N.W.2d 627, 630, and cases there cited. We rejected a similar attack upon such an instruction upon the basis of Iowa law in Illinois Central v. Stufflebean, supra.

In the present case, there is evidence that all traffic from Harvey to Highway 92, which usually traveled over Primary 310, used the accident road as a detour and that the railroad was aware of such use of the road. There is also substantial evidence that the view of the track was materially obstructed by trees, brush and weeds. This case is readily distinguishable factually from Berk v. Arendts, 254 Iowa 363, 117 N.W.2d 905,

relied upon by the defendant. In Berk, the court erred in giving an instruction that the crossing was not unusually hazardous, recognized and applied the principle stated in Wickman but distinguished the case factually. In Berk, the court determined that the motorist could and did see the train in time and except for the icy condition of the road could have stopped to avoid the collision. In our present case, there is substantial evidence which would support a finding that the crossing was unusually hazardous as such term is defined in the cited cases.

### IV.

 Finally, defendant contends the court in finding as a matter of law of sudden emergency upon the ground that there is no evidence that any sudden emergency which might have existed was not brought about by the plaintiff's own fault. The sudden emergency instruction applied both to the acts of the plaintiff and those of the railroad. The jury was directed to apply the doctrine only to an emergency not brought about by the party's own fault. We agree that the sudden emergency instruction should not be given unless there is some evidence that an emergency existed which was not brought about by the negligence of a party claiming its benefit. Under the record here, the jury could find that a sudden emergency was created either by the act of the railroad, for example by failure to sound the statutory warning, or by some negligent act of the plaintiff. No prejudicial error was committed in giving such instruction.

The judgment appealed from is affirmed.